IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GRASSI, et al.,** | **CASE NO. 1:18-CV-02619** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **JOHN GRASSI, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon Defendants-Counterclaimants John Grassi's and Alotech Limited, LLC's ("Alotech") (collectively, "Defendants") Emergency Motion to Recover Documents, Technical Information, Videos, and Other Property of Alotech Limited, LLC ("Motion to Recover Documents").  (Doc. No. 64.)  Plaintiffs-Counterclaim Defendants Michael Grassi and CFOM, Inc. ("CFOM") (collectively, "Plaintiffs") filed a brief in opposition to Defendants' Motion to Recover Documents on April 9, 2020, to which Defendants replied on April 16, 2020.  (Doc. Nos. 71, 73.)

Also, currently pending is Plaintiffs' Motion for New Trial and Relief From Judgment.  (Doc. No. 72.)  Defendants filed a brief in opposition to Plaintiffs' Motion for New Trial and Relief From Judgment on April 27, 2020, to which Plaintiffs replied on May 1, 2020.  (Doc. Nos. 74, 76.)

For the following reasons, Defendants' Motion to Recover Documents (Doc. No. 64) is DENIED, and Plaintiffs' Motion for New Trial and Relief From Judgment (Doc. No. 72) is DENIED.

**I.  Background**

This case arises out of a business dispute involving twin brothers—John Grassi and Michael Grassi—and their respective companies—Alotech and CFOM—regarding the development of a

proprietary process for manufacturing alloy castings known as ablation casting. In October 2018, Plaintiffs filed suit against Defendants, alleging a variety of claims based on Plaintiffs' alleged contributions to the development of ablation casting technology and Defendants' failure to honor an alleged agreement to share the proceeds from the licensing of that technology. (Doc. No. 1-1.) In response, Defendants filed several counterclaims against Plaintiffs. (Doc. No. 8.) Defendants sought declaratory relief related to the disputed intellectual property in ablation casting technology, in addition to bringing claims for defamation, tortious interference with current and prospective business, deceptive trade practices, conversion, and breach of contract. (*Id.*)

On February 5, 2020, the Court ruled on Defendants' Motion for Summary Judgment, substantially narrowing the issues remaining for trial. (Doc. No. 36.) As part of its ruling, the Court rejected Plaintiffs' contention that his signatures were forged on three documents—a notarized patent assignment from June 2017 (the "June 2017 Patent Assignment") and two Contractor Confidentiality and Work Product Agreements (the "IP Agreements") that are essentially identical except for being dated several days apart in October 2012. (*Id.* at 4-6, 20 ("[T]he Court finds that the IP Agreements and the June 2017 Patent Assignment signed by Michael Grassi are valid and enforceable.").) Based on the terms of the IP Agreements, as well as Michael Grassi's status as an Alotech employee and the June 2017 Patent Assignment, the Court granted summary judgment in part to Defendants on Count 3 of their counterclaims for declaratory judgment, declaring that "Plaintiffs have no legally cognizable ownership right in all intellectual property in ablation casting that Alotech is using in its business and selling to third parties." (*Id.* at 23, 30.)[1]

---

[1] The Court notes that Plaintiffs' interpretation of this language in both their opposition to Defendants' Motion to Recover Documents and their Motion for New Trial and Relief From Judgment, in which they appear to suggest that they own some of the intellectual property in ablation casting that Alotech is using, is incorrect. (*See* Doc. No. 71 at 3-4; Doc. No.

As a result of the Court's ruling on summary judgment, Plaintiffs' only remaining causes of action prior to trial were breach of contract and promissory estoppel, both of which were premised on Defendants' failure to honor an alleged oral contract between Plaintiffs and Defendants to split the proceeds from a licensing deal with Honda. (Doc. No. 39 at 4-12.) On the other side, Defendants voluntarily dismissed their claims for conversion and breach of contract shortly before trial, and their only remaining claims at trial were for defamation, tortious interference with current and prospective business, and deceptive trade practices. (*See* Doc. No. 65 at 10:16-12:24.)

Defendants filed several Motions in Limine prior to trial, one of which sought to preclude Plaintiffs from introducing evidence contesting the validity of the IP Agreements because that issue had already been decided by the Court's order on summary judgment. (Doc. No. 38-1 at 4-5.) Plaintiffs opposed Defendants' Motion in Limine and presented several new documents in support of their forgery claim that they did not submit as evidence to oppose summary judgment. (Doc. No. 40 at 1-3.) Plaintiffs provided no justification for their submission of these documents for the first time a week before trial and for their failure to present these documents in support of their opposition to Defendants' Motion for Summary Judgment. As a result, the Court found Plaintiffs had failed to justify reconsideration of the law of the case as to the validity of Michael Grassi's signatures on the IP Agreements. (Doc. No. 46 at 3-5.) Thus, the Court granted Defendants' Motion in Limine precluding Plaintiffs from introducing evidence suggesting that the IP Agreements were forgeries. (*Id.*)

---

72-1 at 13 n.3.) The Court's declaration clearly indicates that Plaintiffs do not have any ownership rights in any of the ablation technology at issue.

3

At trial, based on the Court's ruling on Defendants' Motion in Limine, the Court barred Michael Grassi from testifying that Defendants' Trial Exhibit 59—one of the IP Agreements—was inauthentic.  (Doc. No. 66 at 323:17-21, 329:21-25.)  The Court also excluded Plaintiffs' Trial Exhibit 8 ("Exhibit 8") based on the attorney-client privilege.  (Doc. No. 67 at 625:22–628:15.)  Exhibit 8 consists of two emails in early 2013 from Brett Lockwood ("Lockwood"), Alotech's then corporate counsel, to John Grassi attaching a proposed "contractor work product agreement for CFOM."  (Doc. No. 72-2 at 3-8.)  John Grassi then forwarded these emails to Michael Grassi at his Alotech email address, who responded that "this is more in tune with what I would sign" and that "this still does not cover the other items." (*Id.* at 3.)  The Court found that the document was a privileged communication between Alotech's counsel and employees, and that Michael Grassi could not waive Alotech's privilege.  (*See* Doc. No. 67 at 625:22–628:15.)  Defendants did not object to the introduction of a redacted version of the document that showed Michael Grassi's message and the attached work-product agreement, but redacted Lockwood's message to John Grassi.  (*Id.*; *see* Doc. No. 74-1.)

After the trial concluded, the Court granted Plaintiffs' motion for a directed verdict on Defendants' three remaining counterclaims, and the jury returned a unanimous verdict in favor of Defendants on Plaintiffs' breach of contract and promissory estoppel claims.  (Doc. No. 56; Doc. No. 69 at 767:7-14.)

Subsequently, Defendants filed their Motion to Recover Documents in which they request, among other things, an order requiring that all documents, videos, e-mails, reports, and other technical information of Alotech in Plaintiffs' possession related to ablation casting, whether produced in discovery, used at trial, or otherwise, be returned to Alotech.  (Doc. No. 64.)  Shortly thereafter, Plaintiffs filed their Motion for New Trial and Relief From Judgment, seeking a new trial, an

evidentiary hearing on their forgery claims, and vacation of the Court's order on summary judgment as to the validity of the IP Agreements and the June 2017 Patent Assignment. (Doc. No. 72.) Both Motions have been fully briefed and are ripe for consideration.

## II. Motion to Recover Documents

Defendants contend that the terms of the IP Agreements and the Stipulated Protective Order (Doc. No. 23) ("Protective Order") entered by the Court governing the use of information produced in discovery require Plaintiffs to return Alotech's documents. (*See* Doc. No. 64-1.) The Court finds these documents do not warrant granting Defendants' request.

### a. Protective Order

First, Defendants contend that the Protective Order requires Plaintiffs to return all Alotech materials produced in discovery that were designated as "Confidential" or "Highly Confidential" within thirty days of the termination of the action, and Plaintiffs are therefore in wrongful possession of these materials. (*Id.* at 5-7.) As Plaintiffs correctly point out, however, the parties' obligations to return designated materials do not arise until "thirty (30) calendar days following either i) the termination of this litigation pursuant to a final judgment disposing of all issues in the case and *all appeals in this litigation have been exhausted* or ii) the full and complete resolution of this litigation resulting in a dismissal with prejudice of all claims and counterclaims alleged in this litigation." (Doc. No. 23 at ¶ 31 (emphasis added).) Because both Plaintiffs and Defendants have filed notices of appeal that are still pending, the conditions requiring the return of documents produced in discovery under the Protective Order have not yet been satisfied. (*See* Doc. Nos. 61, 70.)

To avoid this conclusion, Defendants also assert that the Protective Order permits parties to "apply to the Court at any time for additional protection . . .when convenience or necessity requires."

(Doc. No. 23 at ¶ 33.) Defendants contend that all of the documents Plaintiffs need on appeal are part of the summary judgment record, and the Court should thus order the return of the thousands of other documents and materials that were produced during discovery. (Doc. No. 73 at 6.) The Court is not persuaded by this argument. Both parties have appealed various aspects of this Court's rulings, remand for a new trial or other proceedings is possible, and it does not make sense to require Plaintiffs to return thousands of documents that were produced in discovery when litigation is ongoing and those documents may be relevant to future proceedings. Accordingly, the Court finds the Protective Order does not support granting Defendants' requested relief at this time.

    **b. IP Agreements**

Defendants also contend that the IP Agreements, which the Court found were valid on summary judgment, require Plaintiffs to return the relevant documents, including two videos that were not produced during discovery that Plaintiffs used at trial. (Doc. No. 64-1 at 4-6.) Specifically, Defendants cite to the following provision of the IP Agreements:

> All records, files, memoranda, computer programs, reports, lists, drawings, plans, sketches, documents and the like (together with all copies thereof) containing Confidential Information of [Alotech], which Contractor shall use or prepare or come in contact with in the course of, or as a result of, Contractor's engagement shall, as between the parties hereto, remain the sole property of [Alotech]. Upon the termination of Contractor's engagement or upon the prior demand of [Alotech], Contractor shall immediately return or deliver to [Alotech] all such materials and shall not thereafter cause removal thereof from the premises of [Alotech].

(Doc. No. 8-1 at 1-2.) In response, Plaintiffs argue that the IP Agreements do not support Defendants' request because (1) the parties' appeal divested the Court of jurisdiction to issue such an order, (2) Defendants seek relief based on claims that Defendants did not prosecute, and (3) such relief would be inappropriate at this time regardless of the merits of Defendants' request because it would deprive Plaintiffs' of their litigation file in the midst of their pending appeal. (Doc. No. 71 at 2-5.)

6

Even assuming, *arguendo*, that this Court has jurisdiction over Defendants' request, the Court agrees with Plaintiffs that Defendants cannot obtain relief based on claims that Defendants voluntarily dismissed before trial. By requesting that the Court enforce the terms of the IP Agreements by requiring Plaintiffs to return documents related to ablation casting, Defendants are essentially seeking injunctive relief based on a breach of contract claim. Indeed, Defendants' counterclaims initially included a breach of contract claim alleging that Plaintiffs had breached the IP Agreements by wrongfully removing and possessing Alotech property. (Doc. No. 8 at ¶¶ 94-101.) Defendants' counterclaims also originally included a claim for conversion based on Michael Grassi's alleged wrongful removal of Alotech property when he left Alotech's employment. (*Id.* at ¶¶ 88-93.) However, Defendants never sought the type of injunctive relief now requested and dismissed both of these counterclaims before trial. (Doc. No. 65 at 10:16-12:24.) Defendants cannot obtain relief under the terms of the IP Agreements without having brought any claims to enforce them. And Defendants provide no authority that simply because the Court found that the IP Agreements were valid as part of its summary judgment order on Defendants' claim for declaratory judgment, the Court can now enforce the terms of those agreements without Defendants ever having proved the requisite elements of breach of contract, conversion, or any other claim that would entitle them to relief.[2]

Consequently, the Court finds no basis on which to grant Defendants' requested relief and denies Defendants' Motion to Recover Documents.

---

[2] The cases cited by Defendants in support their position are easily distinguishable. *See Degen v. United States*, 517 U.S. 820, 821 (1996) (deciding whether a district court had the inherent authority before trial to "strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution"); *In re Lafayette Radio Electronics Corp.*, 761 F.2d 84, 92-93 (2d Cir. 1985) (finding court had jurisdiction over a *separate complaint* seeking to enforce a prior judgment).

7

**III.  Motion for New Trial and Relief From Judgment**

In their Motion for New Trial and Relief From Judgment, Plaintiffs assert that the Court should conduct an evidentiary hearing on Plaintiffs' Motion, vacate the portion of its summary judgment opinion finding that the IP Agreements and June 2017 Patent Assignment are valid, and grant a new trial.  (Doc. No. 72.)  The Court finds that an evidentiary hearing is not necessary and denies Plaintiffs' requests for the reasons set forth below.

    **a.  Relief From Judgment Under Rule 60(b)**

Pursuant to Rule 60(b), Plaintiffs ask the Court to vacate the portion of its summary judgment opinion finding that the IP Agreements and the June 2017 Patent Assignment are valid and enforceable.  (Doc. No. 72-1 at 5, 12-13.)  Plaintiffs assert they are entitled to relief from judgment under Rule 60(b)(3) based on Defendants' fraud in the creation and presentation to the Court of the IP Agreements, which Plaintiffs contend were forged.  (*See id.*; Doc. No. 76 at 4-5.)  Defendants contend that relief from judgment is not warranted because Plaintiffs had the opportunity to submit the documents now relied upon in opposition to Defendants' Motion for Summary Judgment, but failed to do so.  (Doc. No. 74 at 3-5.)[3]  The Court agrees.

Pursuant to Rule 60(b)(3), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ.

---

[3] Defendants also imply that Plaintiffs' request to vacate the Court's prior summary judgment order is untimely because Rule 59(e) requires that motions to alter or amend a judgment be filed no later than twenty-eight days after the entry of judgment, and Plaintiffs did not bring their Motion within twenty-eight days of the Court's summary judgment order. (Doc. No. 74 at 2.)  However, Plaintiffs seek relief from the Court's summary judgment order under Rule 60(b)(3), not Rule 59.  (*See* Doc. No. 76 at 4.)  As such, Plaintiffs' Motion is timely under Rule 60(c), which provides that a motion under Rule 60(b)(3) need only "be made within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).

P. 60(b)(3). However, "[t]he availability of relief from judgment under Rule 60(b)(3) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Thurmond v. Wayne Cty. Sheriff Dep't*, 564 F. App'x 823, 827 (6th Cir. 2014) (quoting *Info–Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)). "Accordingly, the party seeking relief under Rule 60(b)(3) bears the burden of showing entitlement to such relief by clear and convincing evidence." *Id.*

In addition, "[t]he sort of 'fraud' with which Rule 60(b)(3) is concerned is conduct by an opposing party or witness during the litigation that 'prevented the moving party from fully and fairly presenting his or her case.'" *Jasper v. Rockensuess*, No. 04-70067, 2006 WL 2811301, at *2 (E.D. Mich. Sept. 28, 2006) (citations omitted). Thus, "[o]rdinarily, a movant must show that there was 'misconduct [not] known to the movant <u>before judgment entered</u>,' and 'that the misconduct adversely affected the fairness of the proceedings.'" *Kline v. Mortg. Elec. Registration Sys.*, No. 3:08-cv-408, 2016 WL 3926481, at *3 (S.D. Ohio July 18, 2016) (quoting *Thurmond*, 564 F. App'x at 830); *see also United States for Use & Benefit of Nasatka Barrier, Inc. v. Int'l Fid. Ins. Co.*, No. 16-8064-DSF-(AGRx), 2019 WL 6971381, at *2 (C.D. Cal. Apr. 2, 2019) ("Because Defendants were aware of the alleged misrepresentations and had multiple opportunities to address those misrepresentations well before the Court issued its Partial Judgment Order, Defendants may not seek Rule 60(b)(3) relief based on those misrepresentations."); *In re Turner & Cook, Inc.*, No. 10-11344, 2014 WL 1922873, at *4 (Bankr. D. Vt. May 14, 2014) ("Even if the evidence the Trustee submitted in support of the summary judgment motion was not truthful, Mr. Fisher does not explain how that evidence prevented him from timely opposing the summary judgment motion. . . . In sum, the Court finds Mr. Fisher's fraud allegations are an attempt to relitigate the merits of the summary judgment motion, and fail to

9

meet the standard for relief under Rule 60(b)(3)."). "A motion for relief from judgment is not an opportunity to re-litigate the merits of the underlying case." *Kline*, 2016 WL 3926481, at *3.

Here, Plaintiffs contested the validity of Michael Grassi's signatures on the IP Agreements in opposition to Defendants' Motion for Summary Judgment. However, Plaintiffs relied solely on Michael Grassi's deposition testimony, which the Court found was insufficient to raise a genuine issue of material fact in light of numerous documents and witness declarations indicating the authenticity of those documents, as well as Michael Grassi's own actions in conformity with the terms of the IP Agreements. (Doc. No. 36 at 18-20.) None of the documents that Plaintiffs now rely on in support of their allegations of fraud were submitted at summary judgment. Two of the documents were submitted to the Court for the first time a week before trial in opposition to Defendants' Motions in Limine, and one was identified for the first time in support of Plaintiffs' current Motion for New Trial and Relief From Judgment. (*See* Doc. No. 40 at 1-2; Doc. No. 72-1 at 9-11; Doc. No. 72-2 at 12-13.) Yet, Plaintiffs have never offered any explanation for why these documents were not presented earlier in the case on summary judgment. They do not claim that they were recently discovered, that any sort of hardship prevented them from identifying the documents earlier, or that Defendants failed to produce them in a timely manner. Indeed, it is undisputed that Defendants produced a redacted form of Exhibit 8, on which Plaintiffs' Motion for New Trial and Relief From Judgment is focused, before summary judgment briefing commenced. (Doc. No. 74 at 4 n.3.) Because Plaintiffs were aware of Defendants' alleged fraudulent conduct and had the opportunity to address it on summary judgment, but simply failed to adequately do so, Plaintiffs are not entitled to Rule 60(b)(3) relief based on that alleged conduct. Plaintiffs had the opportunity to fully present their case in opposition to Defendants' Motion for Summary Judgment, and their request for relief from

the Court's prior order is simply an attempt to relitigate that motion. As such, Plaintiffs' request is denied.

### b. New Trial Under Rule 59(a)

In their Motion for New Trial and Relief From Judgment, Plaintiffs also request that the Court order a new trial pursuant to Rule 59(a). While not entirely clear from their Motion, it appears that Plaintiffs assert three bases for the grant of a new trial: (1) the verdict was based on false evidence in the form of the IP Agreements, (2) the Court erred in excluding Exhibit 8 based on the attorney-client privilege, and (3) the Court erred in excluding Michael Grassi's testimony that the IP Agreements were not authentic. (Doc. No. 72-1 at 4-12.) In opposition, Defendants contend that the Court correctly excluded the contested evidence and, alternatively, that any error was harmless. (Doc. No. 74 at 6-12.)

Rule 59(a) provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Sixth Circuit has "interpreted this Rule to require a new trial only 'when a jury has reached a "seriously erroneous result" as evidenced by[ ] (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)).

With respect to Plaintiffs' claim that false evidence was presented at trial, the Sixth Circuit has held that "[a] new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury might have reached a different

11

conclusion; *that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial.*" *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 134 (6th Cir. 1990) (emphasis added) (quoting *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949)).  As discussed above, Plaintiffs were aware of the allegedly false documents presented by Defendants and had the opportunity to contest the validity of those documents on summary judgment.  Consequently, Plaintiffs' allegations in this regard do not warrant a new trial.

Next, with respect to Plaintiffs' assertions that the Court erred by excluding certain evidence, courts should overturn a jury's verdict based on evidentiary errors only if the errors were not harmless.  *Mike's Train House*, 472 F.3d at 409.  "Under the harmless error rule, an error in admitting or excluding evidence may furnish a basis for granting a new trial only if it affects a party's 'substantial rights' or if justice so requires."  *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015) (quoting Fed. R. Civ. P. 61).  "[I]f 'one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.'"  *Mike's Train House*, 472 F.3d at 409-10 (quoting *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002)).  In applying this standard, the Court must first ask whether an evidentiary error occurred and then "examin[e] the proceedings in their entirety" to determine whether it was harmless.  *Kendel v. Local 17-A United Food & Commercial Workers*, 512 F. App'x 472, 480 (6th Cir. 2013) (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009)).  "Application of the test is 'highly sensitive to the unique context of the particular case, including the one-sided or closely

balanced nature of the evidence bearing upon the issue which the error arguably affected, and the centrality of that issue to the ultimate decision.'" *Id.* (quoting *Beck*, 377 F.3d at 635).

The first evidentiary error that Plaintiffs claim supports a new trial is the Court's exclusion of Exhibit 8 based on attorney-client privilege. (Doc. No. 72-1 at 5-12.) The Court concludes that the evidence should not have been deemed privileged, but that any error in the exclusion of Exhibit 8 was harmless.

"The attorney-client privilege in Ohio is governed by R.C. 2317.02(A) and, in cases not addressed there, by common law." *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 10th Dist. 2012).[4] "Because a client's voluntary disclosure of confidential communications is inconsistent with an assertion of the privilege, voluntary disclosure of privileged communications to a third party waives a claim of privilege with regard to communications on the same subject matter." *Id.* at 1080 (collecting cases). However, the fact that communication about legal advice is between or among employees of the client does not necessarily deprive it of its privileged status. *U.S. ex. rel. Fry v. The Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5033940, at *5 (S.D. Ohio Dec. 11, 2009).

In this case, John Grassi forwarded Lockwood's email regarding a proposed contractor work-product agreement with CFOM to Michael Grassi. (Doc. No. 72-2 at 3-8.) Defendants claim that the disclosure of these communications to Michael Grass did not waive Alotech's attorney-client privilege because Michael Grassi was Alotech's employee at the time the email was sent in 2013. (Doc. No. 74 at 7-8.) But the Court agrees with Plaintiffs that, in this context, Michael Grassi was

---

[4] "In a diversity case, a federal court applies federal law to resolve work product claims and state law to resolve attorney-client privilege claims." *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *13 (S.D. Ohio Apr. 11, 2017).

13

adverse to Defendants. (Doc. No. 72-1 at 7; Doc. No. 76 at 1-2.) The subject matter of the emails in Exhibit 8 is a proposed contract between Alotech and CFOM. As such, John Grassi did not send the communication to Michael Grassi in his role as an Alotech employee, but rather to negotiate a contract between CFOM, of which Michael Grassi is the sole member, and Alotech. Therefore, the voluntary disclosure of the emails in Exhibit 8 to Michael Grassi waived any privilege with regard to those communications.

Although the Court erred in finding that Exhibit 8 was privileged, the Court finds that the error was harmless. Plaintiffs assert that Exhibit 8 constitutes evidence that the IP Agreements are not authentic and that the jury could have concluded from this document that John Grassi was untruthful and that Michael Grassi possessed an interest in the ablation casting technology at issue. (Doc. No. 72-1 at 9-10.) However, the Court had already decided on summary judgment that the IP Agreements were valid and that Michael Grassi did not have an ownership interest in the technology. Thus, Exhibit 8 was not relevant to any issues that remained in dispute at trial, and its exclusion did not prejudice Plaintiffs in that regard.

Plaintiffs claim the exclusion of Exhibit 8 also prejudiced them because Defendants used the absence of the emails in Exhibit 8 to impeach Michael Grassi. (Doc. No. 72-1 at 11-12.) But the referenced testimony shows that Defendants' counsel was not directly asking about the IP Agreements or other proposed work-product agreements. Instead, Defendants' counsel was asking about the lack of evidence of the alleged oral agreement to share the proceeds of the licensing deal with Honda on a 65/35 basis:

> Q. Is there a document where you've actually written to John and said: I'd like to document our understanding?

> A. In February of 2013 there was some e-mail exchange between John, myself, and Brett Lockwood where Honda was looking to show, you know, as far as, like, to do the deal underneath Alotech only, and something came up about a CFOM work product agreement. And I had a conversation with Brett Lockwood, telling him: I can't sign this because it doesn't include John's and my verbal agreement that CFOM owns, like, three-fifths of this technology. And so I talked with Brett. I recall seeing an e-mail. And then about – I think there was some e-mail exchanges culminating around March, early March. And that's the last I knew of it.
>
> I remember sending something to John by e-mail that just outlined our verbal agreement.
>
> Q. And whatever you're describing, you have not presented any document as any of your exhibits outlining what you just testified to, right, where you actually said that you asked Brett Lockwood to document your verbal agreement? You haven't presented any such evidence, have you?
>
> A. I presented a Word document that I have found that I would have pasted into an e-mail.
>
> Q. And has that been presented to the jury today?
>
> A. Not that I know.
>
> Q. Has the jury seen any document from you today where you asked John Grassi to put into writing this 65/35 agreement that you're describing?
>
> A. No. I just memorialized it. That's what the e-mail was.
>
> Q. And we haven't seen that, right?
>
> A. No.

(Doc. No. 66 at 317:14-318:19.) Thus, while Michael Grassi may have indirectly referred to Exhibit 8 in his testimony, that was not the focus of Defendants' counsel's original question or the questions that followed that sought to elicit whether there was any documentation of the verbal agreement regarding the Honda deal, not the contractor work-product agreement that is the subject of Exhibit 8. Because Exhibit 8 was irrelevant to the remaining disputed issues at trial and Defendants did not

15

improperly use the exclusion of Exhibit 8 to impeach Michael Grassi, the Court finds its exclusion based on attorney-client privilege was harmless error.

The final ground on which Plaintiffs request a new trial is the Court's exclusion of Michael Grassi's testimony that Defendants' Trial Exhibit 59—one of the IP Agreements—was inauthentic. (Doc. No. 72-1 at 12.) The Court finds no error in this ruling. As discussed above, the Court determined at summary judgment that the IP Agreements were authentic, and, thus, Michael Grassi's proposed testimony was not relevant to any disputed issues at trial. Accordingly, Plaintiffs have failed to establish any grounds for the grant of a new trial.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Recover Documents (Doc. No. 64) is DENIED, and Plaintiffs' Motion for New Trial and Relief From Judgment (Doc. No. 72) is DENIED.

**IT IS SO ORDERED.**

Date: May 11, 2020

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE