IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GRASSI, et al.,** | **CASE NO. 1:18-CV-02619** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **JOHN GRASSI, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon the Motion for Voluntary Dismissal Without Prejudice of Plaintiffs-Counterclaim Defendants Michael Grassi and CFOM, Inc. ("CFOM") (collectively, "Plaintiffs") filed on February 9, 2022. (Doc. No. 95.) Defendants-Counterclaimants John Grassi and Alotech Limited, LLC ("Alotech") (collectively, "Defendants") filed a Memorandum of Law in Opposition on February 23, 2022, to which Plaintiffs replied on March 2, 2022. (Doc. Nos. 96, 97.)

For the following reasons, Plaintiffs' Motion is DENIED.

**I.   Relevant Background**

    **a. Factual Background[1]**

This case arises out of a business dispute between twin brothers—John Grassi and Michael Grassi—regarding the development of a proprietary process for manufacturing alloy castings known as ablation casting. John Grassi is the founder and sole owner of Alotech, a company that began

---

[1] The factual background of this matter is set forth in several previous decisions (*see, e.g.*, Doc. Nos. 77, 83) and will not be repeated in full herein. Rather, the Court presumes familiarity with its prior opinions and will provide only a broad overview of the facts to place the instant Motion in context.

developing the ablation casting process in the early 2000s. Between 2002 and 2009, Alotech continued to refine the ablation casting process and filed six patents related to the technology. Alotech used that technology to manufacture parts for other companies.

Around 2000, Michael Grassi purchased and became the sole owner of CFOM, a company that manufactured valve equipment and mass flow controllers. In 2006, CFOM began supplying equipment to Alotech for use in its ablation casting process. Later, CFOM also began providing to Alotech the services of Charles Rizzuti, who worked for CFOM and assisted Alotech with computer programming equipment.

The parties dispute the amount to which CFOM and Michael Grassi are entitled from their contributions to the ablation casting technology. Plaintiffs assert that in 2008, John Grassi and Michael Grassi entered into an agreement to share any proceeds from their endeavors, with each brother receiving 50 percent of the proceeds. Then in 2012, according to Plaintiffs, the parties reached an oral agreement in which John Grassi agreed to share the proceeds of a potential deal between Alotech and Honda, with Alotech receiving 65 percent of the proceeds and CFOM receiving 35 percent of the proceeds. Defendants deny that this agreement occurred, and instead, claim that Alotech simply hired Michael Grassi as an employee. In April 2013, as anticipated, Alotech entered into an agreement with Honda.

Shortly after Michael Grassi started working full time on ablation casting technology in the fall of 2012, Defendants assert that he signed a form Confidentiality and Work Product Agreement (the "IP Agreement"). The IP Agreement provided that Alotech would own Michael Grassi's work product and any value relating to ablation casting created by CFOM while Michael Grassi worked

for Alotech. Alotech's files contain two copies of this agreement, one signed on October 22, 2012 and one signed on October 25, 2012. Michael Grassi alleges these signatures are forged.

Michael Grassi also asserts that a third document allegedly signed by him—a June 2017 patent assignment (the "June 2017 Patent Assignment")—was forged. The June 2017 Patent Assignment purports to assign to Alotech all rights in a pending patent application related to ablation casting.

In late 2016, Michael Grassi, CFOM, and Rizzuti all ceased performing services or providing equipment to Alotech in connection with the company's ablation casting work because they believed they were not being paid their fair share from the Honda deal. Defendants contend that they fired Michael Grassi; Michael contends he was never an employee.

Over the years, Defendants made hundreds of thousands of dollars in payments to Plaintiffs, but the parties disagree on the nature and purpose of those payments. Michael Grassi claims that these payments were merely reimbursements for costs and materials; he never received full compensation for his intellectual contributions to the ablation casting technology; and any money he did receive was a result of the alleged oral agreement. John Grassi disputes this and states that he paid Michael Grassi for improvements Michael made to the technology in connection with the Honda deal and for Michael's salary during his employment with Alotech.

    b. **Procedural History**

        i. **Pretrial**

On October 9, 2018, Plaintiffs filed a Complaint against Defendants in the Court of Common Pleas of Cuyahoga County, Ohio, asserting six counts: (1) breach of contract, (2) promissory estoppel, (3) quantum meruit, (4) unjust enrichment, (5) fraud, and (6) misappropriation of trade secrets. (Doc.

No. 1-1.) Defendants removed the case to this Court on November 13, 2018 based on diversity jurisdiction. (Doc. No. 1.)

On December 11, 2018, Defendants filed an Amended Answer, Affirmative Defenses to Plaintiffs' Complaint, Counterclaims Against Plaintiffs, and Third-Party Claims Against Charles Rizzuti ("Amended Answer"). (Doc. No. 8.) Defendants asserted counterclaims against both Michael Grassi and CFOM for deceptive trade practices and breach of contract (Counts V and VII) and counterclaims against Michael Grassi individually for business defamation, conversion, and tortious interference with current and prospective business (Counts I, II, and VI). (*Id.* at 20-22, 25-28.) In Counts III and IV, Defendants also asserted two declaratory judgment counterclaims against Defendants, in which they sought declarations that (1) all intellectual property in ablation casting that Alotech is using in its business and selling to third parties is owned by Alotech and Plaintiffs have no legally cognizable ownership right in such intellectual property, and (2) Plaintiffs do not have any claim to either an ownership stake in Alotech or a share of Alotech's profits from its ablation casting technology. (*Id.* at 23-25.) Finally, in Count VIII, Defendants asserted a third-party claim against Rizzuti, seeking a declaratory judgment that neither CFOM nor Rizzuti individually have any claim to either additional monetary payments from Alotech or any ownership stake in Alotech. (*Id.* at 28-29.)

Significant discovery ensued from January 2019 to September 2019. The docket reflects that the parties engaged in written discovery and that Defendants produced more than 34,000 pages of documents. (*See* Doc. Nos. 24-13; 24-14; 24-15; 95 at 7.) In addition, multiple depositions were taken, including those of Michael Grassi, John Grassi, and Charles Rizzuti. (Doc. Nos. 24-2 through 24-6.) With regard to expert discovery, Plaintiffs were required to identify any expert witnesses by

4

February 18, 2019. (Doc. No. 15.) It is undisputed that they failed to do so. Defendants, on the other hand, identified an expert witness on February 18, 2019. (Doc. No. 18.)

On June 17, 2019, Defendants moved for summary judgment as to all six claims in Plaintiffs' Complaint, as well as Defendants' three declaratory judgment claims. (Doc. No. 24.) Plaintiffs and Rizzuti filed a brief in opposition on July 16, 2019, to which Defendants replied on July 30, 2019. (Doc. Nos. 26, 30.) This Court then extended the discovery deadline until October 7, 2019. (Aug. 6, 2019 Non-Doc. Order.) An additional status conference was held on October 21, 2019. (Doc. No. 33.)

On February 5, 2020, this Court granted Defendants' Motion for Summary Judgment with respect to: (1) Plaintiffs' claims for quantum meruit, unjust enrichment, fraud, and misappropriation of trade secrets (Counts III, IV, V and VI of Plaintiffs' Complaint); (2) Defendants' declaratory judgment counterclaim in Count III of their Amended Answer, and declared that Plaintiffs have no legally cognizable ownership right in all intellectual property in ablation casting that Alotech is using in its business and selling to third parties; and (3) Defendants' declaratory judgment third-party claim in Court VIII of their Amended Answer, and declared that Rizzuti does not have any claim to either additional monetary payments from Alotech or any ownership stake in Alotech. (Doc. No. 36.) In its decision on these issues, this Court determined that Michael Grassi's self-serving testimony that his signature on the disputed agreements was forged, standing alone, was insufficient to create a genuine issue of material fact. (*Id*.) This Court also denied Defendants' Motion for Summary Judgment with respect to (1) Plaintiffs' claims for breach of contract and promissory estoppel (Counts I and II of Plaintiffs' Complaint) and (2) Defendants' declaratory judgment counterclaim in Count IV of their Amended Answer. (*Id.*)

On February 18, 2020, the Court conducted a Final Pretrial Conference. (Doc. No. 37.) Leading up to trial, Defendants filed six Motions in Limine, a Trial Brief, Proposed Stipulations of Fact, a Proposed Joint Preliminary Statement, and a Motion to Permit Testimony via Video Conferencing. (Doc. Nos. 38, 42-44, 48.) Defendants voluntarily dismissed their counterclaims for conversion, breach of contract, and declaratory judgement as to Count IV of their Amended Answer. (Doc. No. 42; Mar. 3, 2020 Non-Doc. Order.)

### ii. Trial

A four-day jury trial then took place from March 10, 2020 to March 13, 2020, in which Plaintiffs called six witnesses and Defendants called four witnesses to testify. (Doc. Nos. 51-54.) At the close of Plaintiffs' case, Defendants made a motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, as to Plaintiffs' claims for breach of contract and promissory estoppel, which the Court denied. (Doc. No. 52.) At the close of Defendants' case, Plaintiffs made a motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, as to Defendants' remaining counterclaims of defamation, tortious interference, and deceptive trade practices, which the Court granted. (Doc. No. 54.) Defendants, in turn, renewed their motion for judgment as a matter of law as to Plaintiffs' claims for breach of contract and promissory estoppel, which the Court again denied. (*Id.*) The jury then returned a verdict for Defendants on Plaintiffs' remaining claims for breach of contract and promissory estoppel. (Doc. No. 56.)

### iii. Post-trial

On March 27, 2020, Defendants filed an Emergency Motion to Recover Documents, Technical Information, Videos, and Other Property of Alotech Limited, LLC. (Doc. No. 64.) Plaintiffs filed a brief in opposition on April 9, 2020, to which Defendants replied on April 16, 2020.

(Doc. Nos. 71, 73.) Shortly thereafter, on April 12, 2020, Plaintiffs filed a Motion for New Trial and Motion for Relief from Judgment in this Court. (Doc. No. 72.) Defendants opposed that Motion on April 27, 2020 and Plaintiffs replied on May 1, 2020. (Doc Nos. 74, 76.) On May 11, 2020, this Court denied both motions. (Doc. No. 77.)

### iv. Appeal

On March 27, 2020, Plaintiffs filed a Notice of Appeal to the Sixth Circuit Court of Appeals, followed by an Amended Notice of Appeal on May 15, 2020. (Doc. Nos. 61, 78.) Defendants filed a Notice of Cross Appeal on April 9, 2020. (Doc. No. 70.) Plaintiffs appealed this Court's decisions: (1) granting summary judgment in Defendants' favor as to Plaintiffs' quantum meruit, unjust enrichment and misappropriation of trade secrets claims; (2) granting summary judgment in Defendants' favor as to Defendants' declaratory judgment claim regarding Alotech's ownership of the intellectual property; (3) excluding evidence relating to the validity of the IP Agreement; (4) excluding Trial Exhibit 8 and related testimony; and (5) the Jury Instructions for Plaintiffs' promissory estoppel claim.

After briefing, argument, and two mediations, on August 3, 2021, the Sixth Circuit Court of Appeals affirmed in part, reversed in part, and remanded the case for a new trial. *Grassi v. Grassi*, 2021 WL 3355475 (6th Cir. Aug. 3, 2021). The Sixth Circuit affirmed this Court's dismissal of Plaintiffs' unjust enrichment and quantum meruit claims, but reversed the dismissal of Plaintiffs' misappropriation of trade secrets claim and Defendants' counterclaim for declaratory judgment regarding the ownership of intellectual property. *Id*. at *5-7. The Sixth Circuit further reversed this Court's rulings excluding Trial Exhibit 8 and Michael Grassi's testimony that the IP Agreements were inauthentic. *Id*. at *8-9. Ultimately, the Sixth Circuit determined that substantial issues of

material fact existed as to whether Michael Grassi's signatures on the IP Agreements and the Patent Assignment were forged and remanded the case for a new trial. *Id*. at *7-9.

### v. Post-remand

Following remand, this Court held a status conference on October 6, 2021. During the conference, Plaintiffs indicated that they had not yet retained new trial counsel. The Court noted that Plaintiffs had known for two months that they would need new counsel for the retrial, but nonetheless allowed Plaintiffs until November 5, 2021 to retain new counsel. (Oct. 6, 2021 Non-Doc. Order.) The Court also indicated that it was not inclined to reopen expert discovery in this case but was "receptive to allowing a single discovery request from each side regarding the existence or availability of certain original documents." (*Id*.)

Plaintiffs' new counsel entered appearances on November 3, 2021. (Doc. Nos. 88, 89.) Shortly thereafter, Plaintiffs filed a Motion to Reopen Discovery. (Doc. No. 90.) Therein, Plaintiffs sought leave to conduct discovery on the following topics: (1) the authenticity of the disputed agreements; (2) copies of Michael Grassi's and Rizzuti's emails from Alotech; (3) "discovery regarding the scientific and economic importance of the technology contributed to Alotech by Michael Grassi;" and (4) "discovery regarding the economic losses sustained by plainitffs." (Doc. No. 90-1 at 1.) Further, Plaintiffs sought leave to retain and submit reports from expert witnesses on three issues: (1) whether Michael Grassi's signature on the disputed agreements was authentic; (2) "the scientific and economic importance of the technology contributed to Alotech by Michael Grassi;" and (3) "the economic losses sustained by plaintiffs." (*Id.* at 1-2.)

The Court conducted a status conference on November 16, 2021, during which it denied Plaintiffs' Motion to Reopen Discovery. (Doc. No. 91.) However, the Court allowed the parties to

supplement the previous discovery conducted before the first trial in certain limited respects.[2] (*Id.*) Trial was set for May 31, 2022 with a Final Pretrial Conference set for May 13, 2022. (*Id.*)

The parties exchanged supplemental discovery as directed.[3] Plaintiffs' production consisted of 22,777 documents, very little of which Defendants claim contains "anything new or relevant." (Doc. No. 96 at 7; Doc. No. 96-2 at ¶¶ 17-18.) Defendants produced a total of 273 additional documents. (Doc. No. 96-2 at ¶ 17.)

On February 9, 2022, Plaintiffs filed the instant Motion for Voluntary Dismissal Without Prejudice. (Doc. No. 95.) Defendants filed a Brief in Opposition on February 23, 2022, to which Plaintiffs replied on March 2, 2022. (Doc. Nos. 96, 97.)

## II. Standard of Review

After an answer or motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th

---

[2] Specifically, the Court allowed the parties sixty days to supplement the previous discovery as follows: "[1] The parties are permitted to serve on one another a single document request regarding the existence and location of original copies of three documents; [2] Plaintiffs represented that they have recently accessed certain documents that were located on an old computer belonging to Michael Grassi. Plaintiffs shall supplementally produce any documents retrieved from this computer that are responsive to any discovery requests that Defendants had previously served upon Plaintiffs. Based upon the contents of these recently retrieved documents, Plaintiffs may request that Defendants supplement any discovery requests Plaintiffs had previously served upon Defendants; [3] Plaintiffs agreed to consult the document requests previously served upon them and provide exemplars of Michael Grassi's handwriting to Defendants if such documents are in accordance with discovery requests that were previously served; [4] Plaintiffs' counsel agreed to inquire of Michael Grassi regarding any intellectual property, such as videos or other materials, that he may have in his possession that are the property of Defendants. Plaintiffs shall return any unauthorized materials in their possession to Defendants." (Doc. No. 91.)

[3] Plaintiffs moved for an extension to produce supplemental discovery on January 21, 2022, which Defendants opposed that same day. (Doc. Nos. 93, 94.) This Court granted the Motion in part, directing the parties to exchange all supplemental discovery by no later than February 3, 2022. (Jan. 24, 2022 Non-Doc. Order.)

Cir. 1994). The purpose of this rule "is to protect the nonmovant from unfair treatment." *Id.* The court may deny a plaintiff's motion for a dismissal without prejudice if the defendant would suffer plain legal prejudice from the dismissal. *Pingle v. Richmond Heights Local School Dist. Bd. of Educ.*, 2014 WL 1331041 at *2 (N.D. Ohio Mar. 28, 2014).

To determine whether a defendant will suffer plain legal prejudice, the court considers "such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Grover*, 33 F.3d at 718; *see also Dunlap v. Sevier Cnty., Tenn.*, 2021 WL 3123914 at * 6 (6th Cir. July 23, 2021). These factors are not an "exclusive or mandatory list," and district courts "need not analyze each factor or limit their consideration to these factors" alone. *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 Fed. Appx. 498, 502 (6th Cir. 2007) (citation omitted).

**III.** **Analysis**

Plaintiffs argue that they are entitled to a dismissal without prejudice due to their previous counsel's failures during the first trial. (Doc. No. 95.) Specifically, Plaintiffs maintain that they have been prejudiced by their previous attorney's failures to: (1) properly pursue the issue of the forgery of the disputed documents; (2) designate an expert witness regarding the forgery issue; (3) conduct discovery regarding the scientific and economic importance of the technology contributed by Michael Grassi; (4) conduct discovery regarding the defendants' licensing and monetization of the technology at issue with clients in addition to Honda; (5) designate an expert witness regarding the economic valuation of the technology; (6) designate an expert witness regarding plaintiffs' damages; (7) depose

several of the witnesses identified by defendants; and (8) designate certain critical witnesses on plaintiffs' witness list. (Doc. No. 95-1 at 2-3.)

Defendants argue that a dismissal without prejudice at this advanced stage of the case will cause Defendants to suffer plain legal prejudice. (Doc. No. 96.) Defendants assert that Plaintiffs should not be afforded the opportunity to pursue new legal theories through additional discovery simply because Plaintiffs have obtained new counsel who disagree with prior counsel's strategy. (*Id.*)

The Court agrees with Defendants and finds Plaintiffs' Motion to be an attempted end-run around the Court's previous denial of Plaintiff's Motion to Reopen Discovery. As discussed in more detail below, on the record presented, the four factors set forth in *Grover*, *supra* weigh in favor of denying Plaintiffs' Motion.

### a. Defendants' effort and expense of preparing for trial

Plaintiffs argue that all of Defendants' preparation for trial up until this point will be transferrable and, thus, this factor weighs in Plaintiffs' favor. (Doc. No. 95-1 at 11-12.) Defendants, on the other hand, argue that they have expended substantial time, effort and expense into this case and this factor weighs in their favor. (Doc. No. 96 at 9-11.)

The Court agrees with Defendants and finds that the procedural history of this case speaks for itself. After years of litigation, a four-day trial, an appeal, and now less than three months until a second trial, Defendants have exerted much effort and expense in defending this case. While some of those efforts may be transferrable to a new trial, Plaintiffs now seek extensive new discovery into new case theories that Defendants should not bear the burden of having to defend at this stage of the litigation. *See, e.g.*, *Speckhart v. City of Lorain, Ohio*, 2007 WL 690089 at *1 (N.D. Ohio Mar. 2, 2007) (finding defendant to have "expended significant effort and expense" after filing a motion to

dismiss); *Toke v. Russ Hadick & Assocs. Profit Sharing Plan & Trust*, 2005 WL 8162534 at *2 (S.D. Ohio Sept. 6, 2005) (finding defendants to have "incurred substantial time, effort and expenses" when the case was a year old and the parties had already filed motions for summary judgment).

Accordingly, the Court finds that this factor weighs in favor of Defendants since dismissal without prejudice would cause Defendants plain legal prejudice.

### b. Excessive delay and lack of diligence on the part of the Plaintiff

Despite spending the majority of their Motion describing the prejudice Plaintiffs now face because of previous counsel's failures, Plaintiffs argue that they have not failed to act diligently but, rather, "were prepared to try, and did try, this case in March of 2020." (Doc. 95-1 at 12.) Plaintiffs further assert that they did not miss any deadlines and no motions to compel were filed against them. (*Id.*) Therefore, Plaintiffs argue that this factor weighs in favor of dismissal. (*Id.*)

Defendants disagree, arguing that "Plaintiffs chose not to disclose or call any expert witnesses in this case, and failed to obtain discovery from or call certain witnesses at trial whom they now identify as 'critical,'" including Michael Grassi's wife and two additional witnesses who were disclosed in Plaintiffs' Initial Disclosures. (Doc. No. 96 at 11-14.) Defendants argue that, under analogous circumstances, courts have rejected the argument that counsel's alleged discovery failures warrant voluntary dismissal under Rule 41(a)(2). (*Id.*)

For the following reasons, the Court finds that the alleged failures by Plaintiffs' counsel demonstrate a lack of diligence on Plaintiffs' part in prosecuting the instant action and, therefore this factor also weighs in favor of Defendants.

The Sixth Circuit's decision in *Dunlap v. Sevier County, Tennessee*, 2021 WL 3123914 (6th Cir. July 23, 2021) is instructive. In that case, plaintiff filed a civil rights action alleging violations

of his constitutional rights while he was an inmate in the county jail. *Id.* at *1. The district court set a seven-month discovery period, during which plaintiff responded to written discovery but did not serve any formal discovery requests or take any depositions. *Id.* at *1-2. Plaintiff passed away, and his counsel spent the next several months undertaking efforts to designate an administrator for his estate. *Id.* Plaintiff's counsel did not engage in any formal discovery or seek a stay of proceedings. *Id.* The County Defendants moved for summary judgment on the basis of qualified immunity. *Id.* In response, Plaintiff asked the district court to defer ruling on the pending summary judgment motion to allow limited discovery. *Id.* The district court denied the motion, after which plaintiff moved to dismiss the case under Rule 41(a)(2). *Id.* at *3. The district court denied plaintiff's motion and plaintiff appealed. *Id.*

The Sixth Circuit affirmed the district court in all respects. With regard to the denial of plaintiff's motion for voluntary dismissal, the Sixth Circuit found that the district court "reasonably concluded that dismissal would prejudice the county defendants in light of their modest efforts at trial preparation, the Dunlaps' lack of diligence in pursuing discovery, and the filing of the summary judgment motion." *Id*. at *6. Of particular note, the court held as follows:

> More significantly, the [district] court's decision was grounded in its analysis of the second *Grover* factor, finding that the Dunlaps lacked diligence in prosecuting this action. The court observed that "there is no excuse apparent from the record for the complete failure by plaintiff's counsel to make any detectable effort to obtain the discovery that the plaintiff now says she needs to rebut the defendants' challenges. That lack of diligence contrasts with conduct of the county defendants' counsel, who worked up the case within the original case management timeline established by the Court." The analysis of the Rule 56(d) factors confirms this view. Third, the court reasonably explained that dismissal was not warranted where plaintiff's only justification was an "obvious desire to restart the litigation and secure by other means the scheduling relief" that was previously denied, which plaintiff does not dispute here.

*Id.*

Such is the case here. All of the discovery now sought by Plaintiffs' new counsel could have been obtained during the nearly eight months of discovery in this case. For example, while Plaintiffs complain that former counsel failed to depose several key witnesses, they offer no explanation as to why Plaintiffs could not have done so during the lengthy discovery period in this case. Indeed, in their Initial Disclosures, Plaintiffs themselves identified twenty-five persons with discoverable information, including Kevin Trent and Jim Sheeder, who Plaintiffs now say they should have called as witnesses. (Doc. No. 96-2 at Ex. A.) Plaintiffs were aware of those persons with knowledge, and had every opportunity to depose them during discovery in the instant action, but failed to do so.

Likewise, Plaintiffs had every opportunity to submit additional evidence corroborating their forgery claims, such as affidavits from a handwriting expert or from non-expert witnesses familiar with Michael Grassi's handwriting. Again, Plaintiffs failed to do so.[4] This denotes a lack of diligence. *See, e.g.*, *Dunlap*, 2021 WL 3123914 at *6; *Smith v. Marten Transp. Ltd.*, 2020 WL 4284805 at *3 (W.D. Tenn. July 27, 2020) (in denying motion for voluntary dismissal, district court rejected plaintiff's attempts to "diffuse his responsibility by blaming Plaintiff's local counsel for the lack of effort here").

Similarly, Plaintiffs have long been aware of the need for discovery regarding the licensing and value of the ablation casting technology at issue herein. Notably, in the Parties' Planning Meeting Report filed January 4, 2019, the parties listed the subjects on which discovery was to be sought, including, "the parties' agreements, or lack thereof, concerning the [ablation casting] technology and

---

[4] Indeed, according to Defendants, the question of potential expert witness testimony on the forgery allegations was raised by the previous district judge assigned to this case during a status conference conducted in June 2019. (Decl. of John Moye (Doc. No. 96-2) at ¶ 11.) Counsel for Defendants aver that "Mike Grassi stated to Judge Gwin that they were in contact with a handwriting expert." (*Id.*) Thus, Plaintiffs were certainly aware of the potential need for expert testimony on this issue but yet never designated an expert witness during the lengthy discovery period in this case.

14

the marketing thereof; the parties' marketing of the technology, or the parties' interference therewith, including but not limited to, the marketing of the technology to Honda, Harley Davidson and Parker Hannifin; . . . the profits generated from the marketing of the technology; damages suffered by the parties; communications between the parties and others, including Honda, Harley Davidson, Parker Hannifin and their employees." (Doc. No. 12 at 8-9.) Plaintiffs, thus, were already aware of potential other licensees of the technology and the need to seek discovery on such issues regarding the value of the technology. Their failure to do so constitutes a lack of diligence in prosecuting the case.

Finally, with regard to damages, Plaintiffs consistently identified their damages as those stemming from the breach of the alleged oral agreement regarding the Honda deal.[5] Plaintiffs' new counsel's theory that Plaintiffs may be entitled to even further damages is in stark contrast to Plaintiffs' claims throughout their entire case. Plaintiffs offer no explanation as to why they could not have identified and conducted discovery regarding the larger universe of damages that they now seek, earlier in this case.

In sum, and for all the reasons set forth above, the Court finds that the second *Grover* factor weighs in favor of Defendants.

   c. **Insufficient explanation for the need to take a dismissal**

Plaintiffs rely most heavily on this factor, arguing that they will be prejudiced by previous counsel's failures in the first trial. (Doc. No. 95-1 at 9-11.) But this Court is unpersuaded. Plaintiffs

---

[5] Specifically, when asked in written discovery to "[s]tate with particularity the monetary damages You are seeking in this case," Michael Grassi answered "35% of the proceeds from the Honda deal." (Doc. No. 96-2 at Ex. B.) Plaintiffs again reiterated this damages theory in their Supplemental Answers to Defendants' First Set of Interrogatories, when they answered that they were "seeking 35% of all amounts received by the Defendants from Honda." (*Id.* at Ex. C.) Lastly, Michael Grassi testified to this effect in his deposition on April 30, 2019. *See id.* at Ex. D ("Q. You've stated in your discovery responses that your damages that you're seeking in this case are 30 percent of the proceeds from the Honda deal; is that fair?" A. That's correct.").

15

cannot now rely on the benefit of hindsight and retry their case based on new theories and new evidence not yet obtained. *See Thomas v. Amerada Hess Corp.*, 393 F. Supp. 58, 70 (M.D. Pa. 1975) ("Obviously, a second try would give plaintiffs additional time for pursuing discovery with the experience of the first behind them, but possible smoother sailing in another venture is insufficient reason for permitting them to start anew."); *see also Pingle*, 2014 WL 1331041 at *2 (holding that seeking to abandon the case "halfway through the proceedings" to "pursue more expansive remedies" was insufficient explanation for the need to take a dismissal).[6]

The Sixth Circuit's remand of this case does not give Plaintiffs the opportunity to start over, with new evidence and new legal theories. Rather, Plaintiffs are limited to the discovery they obtained in the first instance, and the Court views this Motion as nothing more than an end-run around the Court's denial of their Motion to Reopen Discovery. *See, e.g.*, *Williams v. Schismenos*, 2017 WL 1024034 at *6 (N.D. Ohio Mar. 16, 2017) (denying motion to voluntarily dismiss where "it is clear that the present motion represents an impermissible attempt to maneuver around the Court's refusal to further extend discovery").

Accordingly, the Court finds that the third *Grover* factor weighs in favor of Defendants.

### d. Whether defendant has filed a motion for summary judgment

Lastly, Plaintiffs argue the fourth *Grover* factor weighs in favor of dismissal because "there is no pending motion for summary judgment and thus no potential for legal prejudice." (Doc. No.

---

[6] Plaintiffs direct the Court to *Moran v. Ruan Logistics*, 2020 WL 4732991 at *3-4 (S.D. Ohio Aug. 15, 2020), in which the district court allowed plaintiff to dismiss the case due to his need for an expert witness. While certain similarities exist between this case and *Moran*, this Court, unlike the court in *Moran*, does not deem this case to be a "close call." *Id.* at *4. Unlike the plaintiff in *Moran*, who suffered severe and catastrophic injuries from the accident at issue in the case, which impacted his ability to actively prosecute his case, no such claims are made here of Plaintiffs. Instead, it appears Plaintiff Michael Grassi has been largely involved in the prosecution of this case from the beginning. (Doc. No. 96 at 12-13.) As such, this Court exercises its discretion differently than the court in *Moran*.

95-1 at 12.) Defendants argue that, although there is no pending summary judgment motion, the fact that this matter has been set for trial "makes the requested dismissal more prejudicial to Defendants than if the parties were merely in the pre-summary judgment stage of the case." (Doc. No. 96 at 16.)

While no motions for summary judgment are currently pending,[7] the case is set for a second trial in less than two months.  This Court agrees with Defendants that the pending trial date makes the request to dismiss this case even more prejudicial to Defendants than if the parties were merely in the pre-summary judgment stage.  This factor weighs strongly in Defendants' favor.

In sum, consideration of the four *Grover* factors weighs heavily against permitting Plaintiffs to voluntarily dismiss this case without prejudice. The Court, therefore, exercises its discretion to deny Plaintiffs' Motion at this late stage in the proceedings.[8]

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion for Voluntary Dismissal Without Prejudice (Doc. No. 95) is DENIED.

**IT IS SO ORDERED.**

Date:  April 19, 2022

    s/ Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE

---

[7] The Sixth Circuit has noted that "[w]hether a dispositive motion is pending is merely a relevant factor under *Grover*; it is not dispositive." *Walther v. Florida Tile, Inc*., 776 Fed. Appx. 310, 316 (6th Cir. 2019).  For purposes of this factor, "[i]t suffices that the trial court considered the posture of the case" in determining whether dismissal is appropriate.  *Id*.

[8] In light of this finding, the Court need not reach the parties' arguments regarding whether Defendants' counterclaim should also be dismissed without prejudice.