UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GRASSI, *et al.*, | ) Case No. 1:18-CV-2619-PAB |
| | ) |
| | ) Judge Pamela A. Barker |
| Plaintiffs, | ) |
| | ) |
| v. | ) **REPLY IN SUPPORT OF PLAINTIFFS'** |
| | ) **BENCH BRIEF CONCERNING** |
| JOHN GRASSI, *et al.*, | ) **ADMISSIBILITY OF SPECIOUS** |
| | ) **DOCUMENTS AND NECESSITY OF** |
| Defendants. | ) **ADVERSE INFERENCE INSTRUCTION** |

Plaintiffs Michael Grassi and CFOM, Inc. ("Plaintiffs") respectfully submit this reply in support of their bench brief concerning admissibility of the three specious documents and the necessity of an adverse inference instruction. Given that Defendants' opposition brief was just filed earlier this evening, this written reply will not be a comprehensive response. But Plaintiffs desire to put as much information as possible before the Court in writing in order to simply, as much as possible, the Court's difficult task of resolving complex evidentiary issues on the eve of trial.

**A. The Allegedly Forged 2012 Work Product Agreements and the Accompanying Email Chains Should Be Excluded.**

Rhetoric aside, Defendants' argument regarding admissibility of the specious documents essentially boils down to two points. They contend (1) that Defendants have gotten the law wrong with respect to who bears the burden of proving the absence of bad faith, and (2) that the screen shot of purported "metadata" they include in their brief puts the matter to rest (if only Plaintiffs "kn[ew] how to read a metadata load file"). (ECF No. 170 at 4.) Defendants are wrong on both points.

*First*, the burden-of-proof issue. Defendants claim to rely on "Sixth Circuit precedent" to support their assertion that Plaintiffs bear the burden of proving bad faith. But while the case law Defendants rely upon may be "precedent" in the sense of "a case previously decided," the case law is not *precedential*—i.e., not binding on this Court. Plaintiffs reply cites three different cases, *none* of which are published in the *Federal Reports* or the *Federal Supplement*. Two of these three cases—*In re Oakley* and *United States v. Ledbetter*—rely on the third case—*In re Sol Bergman Estate Jewelers*—as the **sole**[1] support for the contention that Evidence Rule 1004(a) places the burden on the *opponent* of proffered secondary evident to show that the proponent destroyed the original in bad faith. See *In re Oakley*, 397 B.R. 36, 48 (Bankr. S.D. Ohio 2008); *United States v. Ledbetter*, No. 2:15-CR-080, 2016 U.S. Dist. LEXIS 43800, at *22 (S.D. Ohio Mar. 31, 2016). So all depends on *In re Sol Bergman*, itself a 22-year-old, unpublished bankruptcy decision. In stating that "the party who is challenging the secondary evidence has the burden of showing that the evidence is inadmissible," the *In re Sol Bergman* decision offers no explanation, analysis, or support for this pronouncement other than citation to a single case: the Eleventh Circuit's decision in *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994). See *In re Sol Bergman*, 2000 U.S. App. LEXIS 3357, at *1. The *Ross* decision, in turn, itself cites to only a single case: *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985). See *Ross*, 33 F.3d at 1513-14.

But *Garmany* is not an Evidence Rule 1004(a) case. Instead, *Garmany* dealt with the burden of proof under Evidence Rule 1003. *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985). That rule states that "[a] duplicate is admissible to the same extent as the original

---

[1] *Ledbetter* notes that *In re Sol Bergman Estate Jewelers* in turn cited *United States v. Ross*, an Eleventh Circuit decision. *Ledbetter*, 2016 U.S. Dist. LEXIS 43800, at *20. The errant *Ross* decision in discussed in text, below.

unless a genuine questions is raised about the original's authenticity . . . ." Fed. R. Evid. 1003. *Of course*, then, by the plain text of *that* rule, it is the opponent of the evidence who bears the burden of raising a "genuine question[] . . . about the original's authenticity."

But the parties agree that the issue presently before the Court is whether copies of the specious documents are admissible pursuant to Evidence Rule 1004(a), not Rule 1003.[2] And Rule 1004(a)—far from creating a duty to raise a "genuine question[] . . . about . . . authenticity," Fed. R. Evid. 1003—provides that evidence other than an original is admissible only if the original was lost or destroyed "and not *by the proponent* acting in bad faith." (Emphasis added.) Of course, only the proponent can prove the negative[3]—that it did *not* act in bad faith. So *Garmany* and Rule 1003 analysis do not apply here. The passing, one-sentence statement in *In re Sol Bergman* is nothing more than an honest mistake, a quick reference to a "rule" that does not apply. This is unsurprising given that unpublished bankruptcy opinions like *In re Sol Bergman* are not reviewed with special rigor before release.

By contrast, Defendants have nothing to say about Plaintiffs' contrary citations to Supreme Court precedent and to a directly-on-point published precedent released just last year (albeit outside the Sixth Circuit). (*See* Plaintiffs' Bench Brief Concerning Admissibility of Specious Documents and Necessity of Adverse Inference Instruction at 5.) *See also Keshe v. CVS Pharmacy, Inc.*, No. 2:14-CV-08418, 2016 U.S. Dist. LEXIS 46782, at *5 (C.D. Cal. Apr. 5, 2016) ("the burden of proving loss or destruction under Rule 1004 is on the proponent of the evidence, and the court must find it more probable than not that the originals were lost or

---

[2] Defendants have already pointed to mounds of evidence showing the presence of a "genuine question[] . . . about the original's authenticity," as the Sixth Circuit itself has concluded.
[3] The rule does not say that the non-original evidence is admissible if the original is lost or destroyed "and *the opponent shows bad faith*."

3

destroyed without bad faith" (internal quotation marks omitted; cleaned up)[4]); *United States v. Porter*, No. 18-68, 2019 U.S. Dist. LEXIS 142423, at *16 (W.D. Pa. Aug. 22, 2019) ("it is the burden of the proponent of the evidence to prove that the originals were not lost or destroyed in bad faith"); *State v. Hanson*, 348 P.3d 1070, 1073 (N.M. Ct. App. 2015) (the proponent of secondary evidence "bears the burden to establish that (1) that the originals were lost or destroyed, and (2) their loss or destructions was not the result of bad faith" (interpreting New Mexico Evidence Rule 1004(a), which is identical to the Federal Rule));

***Second***, Defendants include in their brief a screenshot of the "Properties" panel associated with a PDF file they have named "Mike Grassi NDA.pdf." (ECF No. 170 at 4.) But this screenshot gets Defendants nowhere and, if anything, creates *more* cause for concern. First, the name of a file can very easily be changed without altering the "Created" date on this screen. Here's a demonstration:

---

[4] This quotation makes it clear that proponents, not opponents, of secondary evidence have the burden to prove absence of bad faith, as it states that Rule 1004(a) requires an *affirmative finding* by the Court that bad faith is absent. This requires, in turn, that affirmative evidence must be tendered showing the absence of bad faith by a preponderance of the evidence.



Second, note that, though Defendants omit from their screenshot the "Modified:" line of data that directly follows the "Created:" line (see just above), Defendants admit in Ms. Griffis's attached affidavit that the document was modified on "5/22/2019," the date it was "forwarded" from Mr. Lockwood to Mr. Moye. (ECF No. 170-1 at ¶ 10.) Defendants offer no explanation why a simple forward would change this line of data.

Third, and even more troubling, the screenshot included in Defendants' brief states that the "Mike Grassi NDA.pdf" document was created on October 25, 2012 at "4:17:00 PM." (ECF No. 170 at 4.) But the email chain itself states that Dirk Ayers "sent" the email attaching the NDAs at "4:14 PM" that same day. (Defs.' Ex. 196 at 1.) Unsurprisingly, Defendants offer no explanation as to how the PDF could have been created *after* it was supposedly sent.

It bears repeating that Defendants have never produced their Exhibit 196 in native form. Without that native form, it is impossible to verify the true date and time stamp. Even more, defendants have never produced even a *copy* of the email that really matters—i.e., Dirk Ayers's

5

October 25, 2015 email supposedly sending the work-product agreement to Mr. Lockwood in the first place.

Finally, the Court should not lose sight of the fact that, regardless of this, Defendants still have failed to offer a scintilla of proof showing the absence of bad faith. They have *never*, for example, offered *any* explanation as to why or how they destroyed the "absolute original[s]" of the work product agreements that their counsel admitted on the record he had well *after* litigation began.[5]  (ECF No. 102-1 at 3.)  Nor have they ever admitted why they are "unable" to produce the original Ayers email supposedly attaching the work product agreement.

For all of these reasons, in addition to those included in Plaintiffs' opening brief, the Court should bar Defendants from presenting these fraudulent documents to the jury.

### B. **Plaintiffs Are Entitled to an Adverse-Inference Instruction.**

Defendants similarly raise two main arguments in opposing Plaintiffs' request that, in the absence of excluding the specious documents, the Court give an adverse-inference instruction to the jury both at the outset and at the close of trial.  Here, too, both of Defendants' arguments lack merit.

*First*, Defendants assert that Plaintiffs' request for the instruction should be denied "[t]o the extent Plaintiffs' self-styled 'Bench Brief' constitutes a spoliation motion on the eve of trial."

---

[5] Plaintiffs raised this "absolute original" statement by Mr. Moye once again in their Bench Brief Concerning Admissibility of Specious Documents and Necessity of Adverse Inference Instruction, explaining that the Court's failure to grapple with this unequivocal representation in its decision on the motions in limine was another reason to reconsider that ruling.  Thus, Defendants were invited once again to explain themselves: How is it that Mr. Moye had the "absolute original" work product agreements earlier in this litigation and yet subsequently destroyed them?  And how was that destruction *not* a product of bad faith?  Yet once again Defendants have remained completely silent.  Their opposition brief is—like every other filing Defendants have made—mum on this issue.  Plaintiffs' respectfully submit that it may be appropriate for the Court to question defense counsel directly on this issue tomorrow.

(ECF No. 170 at 5.)  This is easily dealt with.  The bench brief is *not* a "spoliation motion on the eve of trial."  Rather, it is simply a request that the Court give an adverse-inference instruction at the beginning and end of trial—an instruction already requested many months ago when Plaintiffs included it in the parties' Joint Proposed Jury Instructions, which were timely filed pursuant to the Court's trial order (*see* ECF No. 127 at 8).

**<u>Second</u>**, Defendants cite the three elements from *Beaven* and assert that Plaintiffs have failed to satisfy *any* of them.[6]  They say that the first element—that the party who destroyed the evidence had "an obligation to preserve it at the time it was destroyed"—has not been satisfied.  *Beaven v. United States DOJ*, 622 F.3d 540, 553 (6th Cir. 2010).  They don't say why this element isn't satisfy but literally only assert that "Plaintiffs have not demonstrated that the first element of *Beaven* is satisfied."  (ECF No. 170 at 7.)  Is it blackletter law that the bald statement of an issue, without reasoning or citation to support it, waives the issue.  *E.g.*, *Lott v. Maclaren*, 569 F. App'x 392, 400 (6th Cir. 2014) (party "waived th[e] issue because he failed to develop it in his brief").  Moreover, it is absurd to suggest that Defendants had no obligation to preserve these documents *once litigation began*, and their counsel has unequivocally stated that he possessed originals of at least the work product agreements *during litigation*, as discussed above.  Defendants also say that *Beaven*'s third element—that the "destroyed evidence was relevant to the party's claim or defense"—also wasn't met here.  But all parties and the Court know—and have previously recognized—the central important of these three documents.  To assert they were not even *relevant* is a self-evident absurdity.

Astonishingly, Defendants also assert that the Plaintiffs haven't satisfied the only remaining element of *Beaven*—that "the records were destroyed with a culpable state of mind,"

---

[6] As shown in Plaintiffs' opening brief, in fact that have plainly satisfied *Beaven*'s requirements

7

*Beaven*, 622 F.3d at 553—not because Defendants aren't culpable but because Plaintiffs "**_have not shown that the inked originals . . . were indeed destroyed . . . ._**"[7] (ECF No. 170 at 7 (emphasis added).)  But for many, many months, Defendants have consistently and fervently asserted that the originals of these specious documents are nowhere to be found.  If it is now Defendants' contention that the original documents were not "indeed destroyed" and "are not missing" (ECF No. 170 at 7), then the copies included in Defendants' exhibits are all inadmissible pursuant to Evidence Rule 1002, and Defendants must produce the originals immediately.[8]

As stated in Plaintiffs' opening brief, *Beaven*'s requirements are summed up in the following passages:  "[A]n adverse inference for evidence spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction."  *Beaven v. United States DOJ*, 622 F.3d 540, 553 (6th Cir. 2010) (citation omitted).  "The 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly . . . or negligently." *Id.* at 554 (emphasis added).  This case fits these requirements to a T.

December 4, 2022                         Respectfully submitted,

                                              /s/ *Emmett E. Robinson*
                                              Michael B. Pasternak (Ohio Bar No. 0059816)
                                              E-mail: *Mpasternak1@msn. com*
                                              **THE LAW OFFICE OF MICHAEL PASTERNAK**
                                              3681 South Green Road, Suite 411
                                              Beachwood, Ohio 44122
                                              Telephone: (216) 360-8500

---

[7] This comes shortly after they absurdly assert that "the . . . Documents are not missing."  (ECF No. 170 at 7.)

[8] It is more likely that Defendants are contorting themselves into the utterly absurd position that *they have shown destruction* for purposes of admission under Evidence Rule 1004(a) but that *Plaintiffs' have failed to show destruction* for purposes of an adverse-inference instruction.  That position in astoundingly illogical and malicious, itself blatant evidence of bad faith.

        Jeffrey Saks (Ohio Bar No. 0071571)
        E-mail: *jsaks@sakslawoffice.com*
        **THE SAKS LAW OFFICE, LLC**
        3681 South Green Road, Suite 411
        Beachwood, Ohio 44122
        Telephone: (216) 255-9696

        Emmett E. Robinson (Ohio Bar No. 0088537)
        E-mail: erobinson@robinsonlegal.org
        **ROBINSON LAW FIRM LLC**
        6600 Lorain Avenue #731
        Cleveland, OH 44102
        (216) 505-6900
        erobinson@robinsonlegal.org

        *Counsel for Plaintiffs Michael Grassi*
        *and CFOM, Inc.*


## Certificate of Service

I hereby certify that on December 4, 2022, a copy of the foregoing was filed electronically.  Counsel will receive notice of, and be able to access, this filing via the Court's electronic system.


        /s/ *Emmett E. Robinson*
        Emmett E. Robinson

        *Attorney for Plaintiffs Michael Grassi*
        *and CFOM, Inc.*