IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GRASSI, et al.,** | Case No.: 1:18-cv-02619 |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **JOHN GRASSI, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Before the Court are several motions.  On January 3, 2023, Defendants filed a Motion to Enforce Term Sheet.  (Doc. No. 182.)  On January 17, 2023, Plaintiffs filed an Opposition to Defendants' Motion and their own Counter-Motion to Enforce Term Sheet.  (Doc. No. 186.)  On October 2, 2023, Defendants filed a Renewed Motion to Enforce Term Sheet.  (Doc. No. 275.)  Most recently, on January 9, 2024, Plaintiffs requested that the Court vacate the Term Sheet and the dismissal order (Doc. No. 178) under Federal Rule of Civil Procedure 60(b)(6).  (Doc. No. 292.)  On January 19, 2024, Defendants filed a Response to Plaintiffs' Rule 60(b)(6) request (Doc. No. 296), to which, on January 24, 2024, Plaintiffs filed a Reply.  (Doc. No. 299.)

For the following reasons, the Court DENIES Plaintiffs' request under Rule 60(b)(6), GRANTS IN PART Defendants' Renewed Motion to Enforce Term Sheet, and DENIES as MOOT Defendants' Motion to Enforce Term Sheet and Plaintiffs' Counter-Motion to Enforce Term Sheet.

I.  **Relevant Background**

The Court has described the factual and procedural background of this case in multiple prior orders. The Court will pick up where its last order, entered on October 5, 2023, left off.[1] (Doc. No. 279.) On October 30, 2023, the Court held a status conference with the parties pursuant to its October 5, 2023, order. (Doc. No. 282.) The parties and the Court discussed the preliminary forensic report and data and resolution of the ongoing dispute in this case. (*Id.*) While the parties could not reach an agreement during the status conference, they agreed to confer further and notify the Court of the status of their negotiations by November 22, 2023. (*Id.*)

On November 22, 2023, the parties filed a Joint Status Report on their negotiations. (Doc. No. 287.) They asked for additional time to narrow the issues between them. (*Id.*) The Court ordered that the parties file a further status report by January 8, 2024.

On January 8, 2024, the parties filed a Joint Status Report notifying the Court that they had reached an impasse. (Doc. No. 292, PageID# 6486.) Seeing no way to resolve the dispute, Plaintiffs requested that the Court vacate the Term Sheet and the dismissal order under Rule 60(b)(6) and set the case for trial. (*Id.* at PageID# 6488.) Defendants instead asked that the Court rule on its Renewed Motion to Enforce Term Sheet. (*Id.* at PageID# 6493.) The Court set a schedule for further briefing on Plaintiffs' Rule 60(b)(6) request. (Non-Document Order dated January 10, 2024.) Defendants

---

[1] Specifically, in that Order, the Court identified three options to resolve the case: (1) the forensic examiner and the parties review ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and determine which, if any, are Defendants'; (2) ▮▮▮▮▮▮▮▮▮▮▮ are not reviewed, Plaintiffs do not return Defendants' property, and, since Defendants' payment of $2.5 million is conditioned on the return of Defendants' property, Defendants are excused from paying Plaintiffs; or (3) the parties renegotiate the settlement agreement to add an additional term such as a permanent injunction preventing Plaintiffs from using Defendants' intellectual property and trade secrets. (Doc. No. 279, PageID# 6352-53.) At the status conference, the parties chose the last option.

2

timely filed a Response opposing Plaintiff's request to vacate. (Doc. No. 296.) And Plaintiffs timely filed a Reply in support of their request. (Doc. No. 299.)

## II. Law and Analysis

The Court will begin its analysis with Plaintiffs' request to vacate under Rule 60(b)(6). It will then turn to Defendants' Renewed Motion to Enforce Term Sheet. Finally, the Court will provide a framework for a way forward.

### A. Plaintiffs' Request to Vacate Under Rule 60(b)(6)

In their request to vacate, Plaintiffs argue that Defendants' conduct since they filed their Motion to Enforce Term Sheet is exceptional and extraordinary and justifies vacating the dismissal and the settlement agreement under Rule 60(b)(6) and setting the case for trial. (Doc. No. 292, PageID# 6490.) Defendants respond that the dispute between the parties is "merely one of disagreement regarding the performance of a contract" and does not merit relief under Rule 60(b)(6). (Doc. No. 296, PageID# 6545.) They further contend that Plaintiffs' request is untimely, and that Plaintiffs have acted in bad faith. (*Id*. at PageID# 6547, 6551.)

For the following reasons, the Court concludes that, at this stage, this case does not merit relief under Rule 60(b)(6). Therefore, it does not reach the parties' timeliness and bad faith arguments.

Rule 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
   (1) mistake, inadvertence, surprise, or excusable neglect;
   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
   (4) the judgment is void;

3

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> **(6) any other reason that justifies relief**.

Fed. R. Civ. P. 60(b) (emphasis added).  Plaintiffs seek relief under Rule 60(b)'s last provision.

Rule 60(b)(6) is a "catchall provision."  *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (quoting *West v. Carpenter*, 790 F.3d 693, 696 (6th Cir. 2015)).  It only authorizes relief for reasons not addressed in one of Rule 60(b)'s other five provisions.  *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).  And it only applies in "exceptional or extraordinary circumstances where principles of equity mandate relief."  *West*, 790 F.3d at 696-97.  Whether "to grant Rule 60(b)(6) relief is a case-by-case inquiry."  *Id*. at 697.  The district court must "intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in the light of all facts."  *Zagorski v. Mays*, 907 F.3d 901, 904 (6th Cir. 2018) (quoting *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013)).  A party must establish a right to relief under Rule 60(b)(6) by clear and convincing evidence.  *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).  A district court has "especially broad" discretion to decide a Rule 60(b)(6) motion.  *Hopper*, 867 F.2d at 294.

Rule 60(b)(6) is "rarely invoked to vacate a settlement agreement."  *G.G. Marck & Assocs. v. N. Am. Invs., Corp.*, 465 F. App'x 515, 517 (6th Cir. 2012); *see also G.G. Marck & Assocs. v. Peng*, 309 F. App'x 928, 935 (6th Cir. 2009) ("A district court should normally seek to enforce a settlement.").  The mere breach of a settlement agreement is insufficient to invoke it.  *Info-Hold, Inc.*, 538 F.3d at 459.  Rather, the Rule requires "something more."  *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007) (*Mustangs Unlimited I*) (quoting *Pruzinsky v.*

4

*Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002)).  The Sixth Circuit has found "something more" to exist where a party "repudiate[es]" (or attempts to repudiate) a settlement agreement.  *ARO Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976); *see also Ford Motor Co. v. Mustangs Unlimited, Inc.*, 420 F. App'x 522, 529 (6th Cir. 2011) (*Mustangs Unlimited II*).

But what does it mean to repudiate a settlement agreement?  The dictionary definition provides that to repudiate is "to reject or renounce (a duty, obligation, offer, etc.); esp., to indicate an intention not to perform (a contract)."  REPUDIATE, Black's Law Dictionary (11th ed. 2019).  *Mustangs Unlimited II* offers additional guidance.  The district court in that case found repudiation where the defendant "exhibit[ed] a certain amount of confusion to the operation" of the consent judgment at issue and "substantial[ly and continu[ally] disregarded" the judgment over three years.  *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 2007 U.S. Dist. LEXIS 66207 at *20 (E.D. Mich. Sep. 7, 2007).  The Sixth Circuit affirmed the district court's Rule 60(b)(6) vacatur because "the traditional remedies relied upon to enforce a consent agreement appear[ed] insufficient" based on the defendant's repeated violations of the agreement.  *Mustangs Unlimited II*, 420 F. App'x at 529.  However, the court found it "unnecessary" to "[d]elineat[e] the difference between repudiation and breach to resolve th[e] case." *Id*. at 529.

Ohio state decisions clarify the line between repudiation and breach.  The settlement agreement in this case is governed by state contract law.  *See Smith v. ABN AMRO Mortgage Group, Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011).  Under Ohio contract law, "anticipatory repudiation" occurs when "one party to a contract refuses to perform under the terms of the contract . . . 'before the time fixed for performance has arrived.'"  *Sunesis Trucking Co. v. Thistledown Racetrack, LLC.*, 22 N.E.3d 190, 195 (Ohio 8th Dist. Ct. App. 2014) (quoting *McDonald v. Bedford Datsun*, 570 N.E.2d 299, 301 (Ohio 8th Dist. Ct. App. 1989)).  The party's repudiation must be clear and unequivocal.

5

*McDonald*, 570 N.E.2d at 301. A request for a change in terms or for cancellation is not a repudiation. *Id*. Nor is an "expression of doubt as to willingness or ability perform." *Farmers Comm'n Co. v. Burks*, 719 N.E.2d 980, 990 (Ohio 3d Dist. Ct. App. 1998). Rather, the party must "insist[] upon terms contrary to the parties' agreement to the point where that insistence amounts to a statement of intention not to perform except on conditions which go beyond the contract." *Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513, 518 (6th Cir. 2010) (quoting *Mihelich v. Active Plumbing Supply Co.*, 2009 Ohio App. LEXIS 1908 at *8 (Ohio 8th Dist. Ct. App. May 14, 2009)).

Plaintiffs argue that Defendants have repudiated the settlement agreement through three actions: (1) refusing to pay any of the settlement amount despite Plaintiffs' turning over the disputed devices to the forensic examiner; (2) seeking to file a new complaint; and (3) stating they will not pay under the Term Sheet unless they receive databases not mentioned in the Term Sheet. (Doc. No. 292, PageID# 6489-90.)

Defendants respond that these alleged actions do not "mandate relief," do not meet the exceptional or extraordinary standard of Rule 60(b)(6), and are conclusory and without support. (Doc. No. 292, PageID# 6548 (citing *Frank v. Good Samaritan Hosp.*, 2023 U.S. App. LEXIS 27221 at *3 (6th Cir. Oct. 11, 2023)).)

For the following reasons, the Court concludes that Plaintiffs have failed to establish that these actions are clear and convincing evidence that Defendants have repudiated the settlement agreement.

First, as further explained in the next section, Defendants' performance under the Term Sheet—███████████████████████████████████—is, at this time, excused. Plaintiffs may have failed to turn over all Alotech property, so Defendants currently have no obligation to pay. Their refusal to pay is not, therefore, a repudiation. Rather, it is their contractual right due to Plaintiffs' possible failure to satisfy the Term Sheet's condition precedent.

6

Second, Defendants did not repudiate the settlement agreement by seeking to file a new complaint. In June 2023, Defendants filed a Motion to File Complaint Under Seal. (Doc. No. 240.) In the Motion, Defendants asked to file a new complaint that "overlap[ed]" with the parties and subject matter of this case but included "additional factual allegations and claims" not before the Court. (*Id*. at PageID# 5792.) They wrote that the new complaint "discuss[ed] in detail the parties' confidential Term Sheet and the confidential settlement terms therein." (*Id*. at PageID# 5792, 5795.) To the extent the new complaint was related to enforcing the settlement agreement, it would have been (and is) entirely appropriate. In *Mustangs Unlimited I*, the court favorably quoted language that "[i]f adequate relief is available through a separate lawsuit for a breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside." 487 F.3d at 469 (quoting 12 Moore's Federal Practice § 60.48[3][d] (3d ed. 2000)). But even if the new complaint was unrelated to enforcement of the settlement agreement, it is far from clear and convincing evidence of repudiation, primarily because Defendants did not ultimately file the new complaint. The mere filing of a motion to file a new lawsuit is akin to "[a] mere request for a change in terms or for cancellation," which does not constitute repudiation. *2454 Cleveland, LLC v. TWA, LLC*, 2020 Ohio App. LEXIS 323 at *9 (Ohio 10th Dist. Ct. App. Feb. 4, 2020).

Plaintiffs' last argument is that Defendants have taken the position that they will not pay unless Plaintiffs return certain databases and data—what Defendants have called the "crown jewels"—and since this demand is not in the Term Sheet, it amounts to a repudiation of the settlement. This argument is Plaintiffs' strongest, but it still fails to meet Rule 60(b)(6)'s high burden. The Term Sheet provides that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

7

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Defendants argue that, at the time they executed the Term Sheet, Plaintiffs possessed two separate computers that contained the databases but, rather than return the databases, Plaintiffs "copied, deleted, destroyed, hid, counterfeited and lied" about them. (Doc. No. 275, PageID# 6076.) Plaintiffs counter that "[n]one of this is true." (Doc. No. 299, PageID# 6567.) In short, whether the Term Sheet contemplated the return of these databases and, more specifically, whether Plaintiffs possessed the databases at the time they executed the Term Sheet are hotly contested questions. Accordingly, at this stage, Plaintiffs have failed to establish that Defendants are insisting on terms that are contrary to the parties' agreement such that the insistence amounts to a repudiation. *See Cincinnati Dev. III LLC v. Cincinnati Terrace Plaza, LLC*, 2023 U.S. App. LEXIS 6132 at *22 (6th Cir. Mar. 14, 2023).

Finally, the Court notes that both parties still have pending motions to enforce the Term Sheet. Plaintiffs filed their Counter-Motion to Enforce Term Sheet in January 2023, and, notwithstanding their instant request for vacatur, they have not withdrawn that Motion. Defendants have repeatedly sought to enforce the Term Sheet since their initial Motion to Enforce in January 2023, not only formally through their Renewed Motion to Enforce, but also informally in the many status reports that they have filed and during the many status conferences that the Court has held since this dispute began. In sum, both parties still want the benefit of the bargain they reached in the Term Sheet— Defendants want their data and Plaintiffs want their money.

Because Plaintiffs have failed to establish by clear and convincing evidence that Defendants have repudiated the Term Sheet, the Court denies Plaintiffs' Rule 60(b)(6) request.

### B. Defendants' Renewed Motion to Enforce the Term Sheet

In their Response to Plaintiffs' Rule 60(b)(6) request, Defendants write that "[t]he dispute before the Court is now simply a contractual interpretation dispute . . . [about] whether [Defendants'] payment obligation is in fact 'subject to' Plaintiffs' return of [Defendants'] data and devices." (Doc. No. 296, PageID# 6553.) They then ask that the Court rule on their Renewed Motion to Enforce Term Sheet. (*Id*. at PageID# 6554.) In that Motion, Defendants seek three things: they ask that the Court hold (1) that Defendants' payment to Plaintiffs was subject to Plaintiffs' return of all Defendants' property by December 25, 2022; (2) that Plaintiffs' breach of the Term Sheet completely offsets Defendants' payment obligations; and (3) that the Court issue a permanent injunction that prevents Plaintiffs from using Defendants' property that Plaintiffs agreed to return. The Court will consider each of these arguments in order.

First, the Term Sheet provides, in pertinent part, that:



And it later provides that:



Defendants argue that the ███████ language in paragraph nine means that Defendants' obligation to pay was "conditioned upon Plaintiffs' returning all ████████████████████████████████" (Doc. No. 275, PageID# 6082.)

9

In Ohio, "[a] condition precedent is a condition which must be performed before the obligations in the contract become effective." *Troha v. Troha*, 663 N.E.2d 1319, 1323 (Ohio 2d Dist. Ct. App. 1995) (citing *Mumaw v. W. & S. Life Ins. Co.*, 119 N.E. 132, 135 (Ohio 1917)). A condition precedent essentially means "that an act must take place before a duty to perform arises." *DN Reynoldsburg, LLC v. Maurices Inc.*, 225 N.E.3d 454, 463 (Ohio 10th Dist. Ct. App. 2023). If that act never takes place, then "the parties are excused from performing." *Id*. To determine whether the parties intended a condition precedent, the Court considers "the language of [the] particular provision, the language of [the] entire agreement, [and] the subject matter of [the] agreement." *Campbell v. George J. Igel & Co.*, 3 N.E.3d 219, 223 (Ohio 4th Dist. Ct. App. 2013). Ohio law disfavors conditions precedent. *4218868 Can., Inc. v. Kwasny*, 654 F. App'x 727, 731 (6th Cir. 2016) (citing *Campbell*, 2 N.E.3d at 223). Therefore, courts are to "avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary." *Id*.

The Court begins with the plain language of paragraph 9. It provides that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ One of those above agreements is for Plaintiffs to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ "Subject to" are "usual words used in creating and stating a condition precedent in a contract context." *Purdin v. Hitchcock*, 1993 Ohio App. LEXIS 505 at *11 (Ohio 4th Dist. Ct. App. Jan. 21, 1993); *see also Grigoryan v. MaxOut Sports, LLC*, 94 N.E.3d 1214, 1221 (Ohio 8th Dist. Ct. App. 2017) (noting that "subject to" are "words that are typically found in a conditional contract"). Based on the language of paragraph 9, the Court concludes that the parties intended to condition Defendants' payment on Plaintiffs' return of Alotech's property.

The language of the entire agreement and its subject matter bolster this conclusion. *C.f. Kwasny*, 654 F. App'x at 731 (reversing district court's conclusion that "subject to" created a

condition precedent because the court did not consider the entire agreement or its subject matter). Plaintiffs originally brought this action because they claimed an interest in Defendants' ablation casting technology. (*See* Doc. No. 1-1, PageID# 7.) Defendants ultimately agreed to settle the action ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In other words, the parties' intent, based on the entire agreement and its subject matter, was to condition ████████████ ████████████████████████████████████████████████████████████████████████

The preliminary results of the forensic exam revealed that Plaintiffs may have failed to return all Defendants' data. (*See* Doc. No. 275, PageID# 6080; Doc. No. 276, PageID# 6268 n.10; Doc. No. 279, PageID# 6349.) In their Statement Interpreting Forensic Report and Data, Plaintiffs agreed that the forensic examiner found ██████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███ (Doc. No. 276, PageID# 6268 n.10.) The Court agreed (and agrees) with this argument. (*See* Doc. No. 279, PageID# 6349.) As Plaintiffs wrote in their Reply to their Rule 60(b)(6) request, determining whether ████████████████████████████ requires further forensic examination. (Doc. No. 299, PageID# 6555.) Since that further examination has yet to occur, Defendants' performance—████████████████████████████████████—is, at this time, excused.

Defendants also argue that Plaintiffs have breached the Term Sheet and that their damages completely offset their obligation ████████████████████. This argument is premature. The Court has concluded that Plaintiffs may have failed to perform a condition precedent of the Term

Sheet. But "[n]on performance of a condition precedent is not a breach of the contract." *Wsb Rehab. Servs. v. Cent. Accounting Sys.*, 2022 Ohio App. LEXIS 2050 at *14 (Ohio 1st Dist. Ct. App. June 24, 2022); *see also Morrison v. Bare*, 2007 Ohio App. LEXIS 5955 at *11 (Ohio 9th Dist. Ct. App. Dec. 19, 2007). As the Court has already indicated, should Plaintiffs return Defendants' property, Defendants could move to offset their payment to Plaintiffs by the amount of attorney's fees they incurred as a direct result of Plaintiffs' breach. (Doc. No. 279, PageID# 6349 (citing *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 142 N.E.3d 1267, 1277 (Ohio Ct. App. 8th Dist. 2019) (en banc)).)

Lastly, Defendants ask that the Court enter a permanent injunction that prevents Plaintiffs ███████████████████████████████████████████ (Doc. No. 275, PageID# 6087.) There may be some authority for the Court to grant injunctive relief in the event of the breach of a settlement agreement. *See Frazier v. Malek*, 591 F. App'x 468, 469 (6th Cir. 2015) ("Retained jurisdiction vests the court with inherent authority to enforce its orders by granting injunctive relief."). But, as the Court explained in the preceding paragraph, there is no breach of the Term Sheet—only possible nonperformance of a condition precedent.

Moreover, the Court notes that the Term Sheet already contains a provision that largely delivers what Defendants are seeking. Paragraph four provides that:



(Doc. No. 182-1, PageID# 4843.) The parties have not briefed this issue, but it appears to the Court that the parties' intent is for this provision ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

12

Accordingly, Defendants could waive the condition precedent ▮▮▮▮ ▮▮▮▮ and then receive the contractual benefit ▮▮▮▮ ▮▮▮▮ *See, e.g., Corey v. Big Run Indus. Park, LLC*, 2009 Ohio App. LEXIS 4352 at *15 (Ohio 10th Dist. Ct. App. Sept. 29, 2009) ("a party may waive a condition precedent by the act of performance . . . despite the non-fulfillment of the condition").

In any case, because there is no breach at this stage, the Court denies Defendants' request for a permanent injunction.

### C. Framework for a Way Forward

Over a year and a half later, this settlement agreement dispute is in largely the same place as where it began. Back in January 2023, Defendants argued that Plaintiffs failed to ▮▮▮▮ ▮▮▮▮ as required under the Term Sheet. (Doc. No. 182, PageID# 4832.) They continue to make that same, though somewhat evolved, argument now. Not all is unchanged, however. The forensic exam did reveal that ▮▮▮▮ ▮▮▮▮ (Doc. No. 275, PageID# 6080; Doc. No. 276, PageID# 6268 n.10; Doc. No. 279, PageID# 6349.) Whether those files are ▮▮▮▮ is still to be determined.

Accordingly, one possible resolution is for Plaintiffs to forensically examine ▮▮▮▮ ▮▮▮▮ If none are Alotech's, Plaintiffs could provide such proof to Defendants and, presumably, demand payment. If any are Alotech's, Plaintiffs could return

13

those files to Defendants and, presumably, demand payment. Should Defendants fail ▮ per the Term Sheet after Plaintiffs present them with proof of compliance, Plaintiffs could file a new motion to enforce the Term Sheet with the Court.[2] Whatever Plaintiffs decide to do, it shall be at their own expense and on their own timeline. Plaintiffs write that they have "lost confidence" in the forensic examiner from Ernst & Young. (Doc. No. 299, PageID# 6566.) Plaintiffs are free to find and pay for their own forensic examiner from this point forward.

In any event, the Court will set no further deadlines, and this case remains dismissed.

### III. Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' request under Rule 60(b)(6). (Doc. No. 292.) The Court GRANTS IN PART Defendants' Renewed Motion to Enforce Term Sheet to the extent it seeks a determination that the return of Alotech property is a condition precedent of the Term Sheet and, therefore, no payment is required. (Doc. No. 275.) Finally, the Court DENIES as MOOT Defendants' Motion to Enforce Term Sheet and Plaintiffs' Counter-Motion to Enforce Term Sheet. (Doc. Nos. 182, 186.)

**IT IS SO ORDERED.**

Dated: March 8, 2024    　*s/ Pamela A. Barker*
　　　　　　　　　　　　　PAMELA A. BARKER
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[2] Taking this hypothetical one step further, should the Court agree with Plaintiffs and order Defendants to pay, but Defendants fail to comply with the Court's order, then, perhaps, Plaintiffs could renew their Rule 60(b)(6) request. As Plaintiffs note, the Court's authority for vacating the Term Sheet and dismissal "would be even stronger should it first order Defendants' compliance with their payment obligations under the Term Sheet." (Doc. No. 292, PageID# 6491.)