IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GRASSI, et al.,** | Case No. 1:18-cv-02619 |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **JOHN GRASSI, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Before the Court is Defendants' Motion to Stay Enforcement of the Court's March 19, 2024 Order Pending Appeal filed on April 12, 2024. (Doc. No. 314.) Plaintiffs oppose Defendants' Motion in two filings. First, on April 12, 2024, Plaintiffs filed a Motion to Strike Defendants' Motion to Stay Enforcement. (Doc. No. 316.) Second, on April 16, 2024, Plaintiffs filed an Opposition to Defendants' Motion to Stay Enforcement. (Doc. No. 321.) On April 16, 2024, Defendants filed a Response to Plaintiffs' Motion to Strike. (Doc. No. 319.)

**I.  Relevant Background**

In their Opposition, Plaintiffs accurately outline the relevant procedural history of this case. (Doc. No. 321, PageID# 6818-32.) The Court adopts their summation in full and adds the following information.

On March 8, 2024, the Court issued a Memorandum Opinion and Order that denied Plaintiffs' request to vacate the Term Sheet and dismissal under Rule 60(b)(6) and that denied in part and granted in part Defendants' Renewed Motion to Enforce Term Sheet. (Doc. No. 301.) The Court's Opinion permitted Plaintiffs to continue the forensic examination process with a forensic examiner of their

own choosing and at their own expense. (*Id*. at PageID# 6605.) The following business day, Plaintiffs asked that the Court order EY, the forensic examiner to:

> (1) return to Plaintiffs or their counsel all devices previously provided by Plaintiffs to the forensic examiner; (2) return all login, password and other access information to Plaintiffs' Gmail account and/or devices; and (3) destroy any information relating to Plaintiffs' devices or accounts in its possession.

(Doc. No. 302.) The Court granted Plaintiffs' request. (Non-Document Order dated March 11, 2024.)

The next day, Defendants filed an Emergency Motion for Preliminary Injunction. (Doc. No. 303.) Defendants sought (1) an order that Plaintiffs are enjoined "from possessing Alotech property, including that which is currently in possession of [EY];" (2) an order that EY return to Defendants "the Dell M6800 laptop, the SanDisk storage device[1], and devices containing files whose metadata identify[] them as having come from the Dell M6800;" (3) a 30-day stay of the Court's March 11, 2024, Non-Document Order; and (4) an order that EY "maintain a forensically sound copy of the devices and data in its possession, as well as its related working papers, in escrow." (*Id*.)

On March 19, 2024, the Court denied Defendants' requests for an injunction and for an order that the devices in EY's possession be returned to them. (Doc. No. 309.) The Court reasoned that it is still to be determined whether the files on the devices that Plaintiffs gave to EY are Alotech property which Plaintiffs should have returned under the Term Sheet. (*Id*. at PageID# 6712-13.) And the Court concluded that it was not appropriate to order Plaintiffs to return the devices until that determination had been made. (*Id*. at PageID# 6713.)

However, the Court granted Defendants' request that EY maintain a forensic copy of the devices and data in its possession. (*Id*.) The Court gave EY 30 days to make the forensic copies if it

---

[1] The SanDisk storage device contains a virtual image of the Dell M6800 laptop. (*See* Doc. No. 207.) In effect, Defendants asked that the Dell M6800 laptop and any device that contains files that were once on the Dell M6800 laptop be returned to them.

had not already done so. (*Id*.) Moreover, the Court stayed its March 11, 2024 Non-Document Order for 30 days. (*Id*.) On the 31st day after the date of the March 19, 2024 Order—April 19, 2024—EY was to return the devices, data, and access information to Plaintiffs. (*Id*. at PageID# 6714.)

On April 5, 2024, Defendants filed a Notice of Appeal of the Court's March 8 and March 19, 2024 Memorandum Opinions and Orders. (Doc. No. 311.) Then, on April 9, 2024, Defendants filed a Motion to Stay Enforcement of the Court's March 19, 2024 Order. (Doc. No. 314.) Specifically, Defendants ask that EY retain all property in its possession until the final adjudication of Defendants' appeal. (*Id*. at PageID# 6765.)

On April 9, 2024, Plaintiffs filed a Motion to Strike Defendants' Motion to Stay Enforcement. (Doc. No. 316.) Plaintiffs argue that because Defendants filed a notice of appeal and their Motion to Stay Enforcement addresses issues now before the Sixth Circuit, this Court lacks jurisdiction to rule on Defendants' Motion. (*Id*. at PageID# 6784.)

On April 16, 2024, Plaintiffs filed an Opposition to Defendants' Motion to Stay and Defendants filed a Response to Plaintiffs' Motion to Strike. (Doc. Nos. 319, 321.)

II. **Law and Analysis**

A. **Jurisdiction**

The Court will first address whether it has jurisdiction to rule on Defendants' Motion. "[A]n effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal," *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987), "unless that appeal is untimely, is an appeal from a non-appealable non-final order, or raises only issues that were previously ruled upon in that case by the appellate court." *Rucker v. United States Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986). Absent one of these exceptions, the only jurisdiction a district court retains is to act "on remedial matters unrelated to the merits of the appeal." *United States v.*

*Harvey*, 996 F.3d 310, 312 (6th Cir. 2021) (quoting *Fort Gratiot Sanitary Landfill v. Mich. Dep't of Nat. Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995)).

Here, Defendants' appeal is timely, it appeals an appealable order[2], and it does not raise issues that the Sixth Circuit previously ruled upon. Therefore, none of the exceptions apply, and this Court only has jurisdiction to rule on Defendants' Motion if it is a "remedial matter" that is "unrelated to the merits of [Defendants'] appeal." *See Harvey*, 996 F.3d at 312.

Federal Rule of Civil Procedure 62(d), in relevant part, provides that "[w]hile an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). And Federal Rule of Appellate Procedure 8(a)(1) provides:

> (1) *Initial Motion in the District Court*. **A party must ordinarily move first in the district court for the following relief:**
>    **(A) a stay of the judgment or order of a district court pending appeal**;
>    (B) approval of a bond or other security provided to obtain a stay of judgment; or
>    (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

Fed. R. App. 8(a)(1) (emphasis added). Thus, if a party "must ordinarily" first file a motion to stay in the district court, it follows that at least some motions to stay are remedial matters over which district courts retain jurisdiction. *See Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 931 (6th Cir. 2002) (denying a motion to stay pending an appeal because the defendant did not first move for it in the district court). But for the Court to retain jurisdiction over Defendants' Motion, it must also be "unrelated to the merits" of Defendants' appeal. *See Harvey*, 996 F.3d at 312.

---

[2] 28 U.S.C. § 1292 provides that the court of appeals "shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . refusing . . . injunctions." 28 U.S.C. § 1292(a)(1). In its March 8 and March 19, 2024 Memorandum Opinions and Orders, the Court denied Defendants' requests for injunctions. Therefore, these Orders are appealable, non-final orders. *See, e.g., Crane v. Washington*, 2019 U.S. App. LEXIS 104 at *2 (6th Cir. Jan. 2, 2019) (citing 28 U.S.C. § 1292(a)(1)) ("An order denying an injunction is immediately appealable.").

Plaintiffs argue that Defendants' Motion to Stay is related to their appeal because the Court already denied Defendants' request for injunctive relief in its March 8 and March 19, 2024 Orders, and Defendants' Motion to stay "raise[s] various factual and legal arguments regarding their likelihood of success on the merits . . . which involve the same issues as in Defendants' appeal" of those Orders. (Doc. No. 316, PageID# 6788.) Plaintiffs cite two district court cases that they argue this Court should follow: *Doe v. Franklin Cnty. Children's Servs.*, 2020 U.S. Dist. LEXIS 174145 (S.D. Ohio Sep. 22, 2020) and *Memphis A. Phillip Randolph Inst. v. Hargett*, 2020 U.S. Dist. LEXIS 187062 (M.D. Tenn. Oct. 8, 2020).

In *Doe* and *Hargett*, the district courts granted motions for preliminary injunctions and the defendants filed notices of appeal and motions to stay the injunctions. *Doe*, 2020 U.S. Dist. LEXIS 174145 at *3; *Hargett*, 2020 U.S. Dist. LEXIS 187062 at *3-4. And in both cases, the district courts denied the defendants' motions to stay because "[i]n considering a motion to stay a preliminary injunction pending appeal, [the district court] would need to consider the same four factors it already considered when making its . . . decision to issue the preliminary injunction." *Doe*, 2020 U.S. Dist. LEXIS 174145 at *3-4; *see also Hargett*, 2020 U.S. Dist. LEXIS 187062 at *4. The district courts concluded that "all matters raised in [the] emergency motion[s] to stay are related to the merits of the appeal[s]," and, accordingly, the courts found they lacked jurisdiction to rule on the motions. *Hargett*, 2020 U.S. Dist. LEXIS 187062 at *4-5; *see also Doe*, 2020 U.S. Dist. LEXIS 174145 at *4.

The Court finds *EMW Women's Surgical Center P.S.C. v. Beshear*, 2017 U.S. App. LEXIS 24931 (6th Cir. Dec. 8, 2017), more instructive on the issue before the Court. In *EMW*, the plaintiffs, a medical facility and three physicians, sued Kentucky alleging that a bill violated their First Amendment rights. *Id*. at *3-4. The district court granted summary judgment for the plaintiffs and permanently enjoined the state from enforcing the bill. *Id*. at *1-2. Kentucky then moved in the court

5

of appeals—rather than in the district court—to stay the injunction, arguing that "it would have been futile[3] to ask the district court to stay its decision because the motion to stay focuses on the same issues that the district court decided in granting summary judgment to [the plaintiffs]." *Id*. at *5. The Sixth Circuit recognized that "there is substantial overlap between the criteria governing issuance of an injunction and a stay." *Id*. (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). But it concluded that Kentucky should have filed its motion to stay pending appeal in the district court because "the district court enjoined enforcement of [the bill] as a remedy after analyzing the merits of the First Amendment claim under the summary-judgment standard." *Id*. The Sixth Circuit reasoned that:

> [Kentucky's] futility argument seeks an exception that swallows the rule: Generally, a party who seeks a stay of the enforcement of an injunction is the subject of an adverse decision by the district court. To excuse a party from the strictures of Federal Rule of Appellate Procedure 8(a)(1) merely because the district court ruled against the party would nullify the requirement.

*Id*. at *5-6.

Here, the Court denied Defendants' requests for injunctions not because they failed to prove the injunction factors, but because they failed to prove a breach of the Term Sheet. (Doc. No. 301-1, PageID# 6617; Doc. No. 309, PageID# 6712-13.) The Court simply found that Plaintiffs had failed to comply with conditions precedent included in the Term Sheet, and it set forth a path forward to so comply. Thus, the Court has yet to consider the arguments Defendants now make in their Motion to Stay. Stated differently, unlike in *Doe* and *Hargett*, this Court has not yet considered and evaluated the four factors that it will need to consider and evaluate in ruling on Defendants' Motion to Stay. Accordingly, the Court concludes that it has jurisdiction to rule on Defendants' Motion to Stay. *See*

---

[3] Federal Rule of Appellate Procedure 8(a)(2) permits a party to first file a motion to stay pending appeal in the court of appeals if the party can either "show that moving first in the district court would be impracticable" or "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested." Fed. R. App. P. 8(a)(2)(A).

*also Busby v. Bonner*, 2021 U.S. App. LEXIS 30952 at *3-4 (6th Cir. Oct. 14, 2021) (concluding that the district court should have ruled on defendants' motion to stay because "the district court ha[d] not yet considered the primary argument" defendants presented in the motion to stay).

### B. Stay Pending Appeal

A district court considers four factors to determine whether a stay pending appeal is appropriate:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434. The four factors are not prerequisites to be met. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). And while the first two factors "are the most critical," *Nken*, 556 U.S. at 434, all "are interrelated considerations that must be balanced together." *Griepentrog*, 945 F.2d at 153. At this stage, "the probability of success" that Defendants must demonstrate "is inversely proportional to the amount of irreparable injury [they] will suffer absent the stay." *Id*. The Court will consider each of the four factors in turn.

#### 1. Likelihood of Success

At a minimum, Defendants must show "serious questions going to the merits" of their appeal. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (quoting *Griepentrog*, 945 F.2d at 153). That means Defendants must demonstrate "more than a mere possibility of relief," *id*. (quoting *Nken*, 556 U.S. at 435), but less than "a high probability of success on the merits." *Griepentrog*, 945 F.2d at 143 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)).

Defendants argue that they are likely to succeed on their appeal because "nowhere within the Term Sheet is it contemplated that property in the safekeeping of E&Y (or any other neutral party) be returned to Plaintiffs while the parties are left to dispute whether Plaintiffs actually retained that property." (Doc. No. 314, PageID# 6761.) This is true. But it is also true that the Term Sheet does not contemplate that a third party such as EY retain the property for safekeeping. The parties agreed to employ EY to resolve their dispute over the settlement agreement. (*See* Doc. No. 207.) And Plaintiffs agreed to turn over the devices in their possession to EY to further that resolution. (*See* Doc. No. 223.) The Court ordered EY to return the devices because Plaintiffs represented that they "lost confidence" in EY and opined that someone other than EY should complete the forensic examination. (Doc. No. 299, PageID# 6566.) Returning the devices to Plaintiffs thus merely returns the parties to the positions they were in when they agreed to the Term Sheet.

Defendants further argue that the intent of the settlement agreement "was predicated on the immediate return of all of Alotech's property." (Doc. No. 314, PageID# 6761.) The Term Sheet provides that Plaintiffs were to return Alotech's property "within 20 days," but Defendants have never insisted on that fixed date. In fact, they filed their Motion to Enforce the Term Sheet on January 3, 2023—that is, over a week after Plaintiffs' time for compliance had expired. And in that Motion, Defendants sought Plaintiffs' compliance with the Term Sheet notwithstanding that the deadline had passed. Moreover, at this point, the only Alotech property contemplated in the Term Sheet that is in EY's possession is the Dell M6800 laptop. The data on that laptop and the other devices has always been Defendants' chief concern. Whether that data is Defendants' property has not yet been determined.

In short, Defendants fail to show any "serious questions" going to the merits of their appeal. This factor weighs against granting a stay.

### 2. Irreparable Injury

Courts look to three factors when evaluating irreparable injury: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (citing *Ohio ex rel. Celebrezze*, 812 F.3d at 290). The irreparable harm alleged "must be both certain and immediate, rather than speculative or theoretical." *Id*. And to show harm is likely to occur, "a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id*. (citing *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). Ultimately, "the key word in this consideration is *irreparable*." *Id*. (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Defendants argue that they will suffer irreparable harm if EY returns the devices to Plaintiffs because the devices contain Defendants' trade secrets and Plaintiffs previously have destroyed or altered Defendants' trade secret data. (Doc. No. 314, PageID# 6762.) First, there is no evidence that the devices in EY's possession contain Defendants' trade secrets. What the Court and the parties know is that the devices contain approximately 41,000 files with Alotech in the file name. Whether these files contain Defendants' trade secrets—or even if they are Defendants' property at all—is still to be determined. Additionally, the devices *do not* contain Defendants' two "crown jewel" databases that allegedly cost Defendants more than $20 million to develop. (*See* Doc. No. 275-1, ¶¶ 5, 20.) Therefore, Defendants' alleged harm is not certain. Moreover, Defendants never made a counterclaim for trade secrets misappropriation. And while they filed a counterclaim for conversion alleging that Plaintiff Michael Grassi unlawfully took Alotech's property when he left Alotech in 2017 (Doc. No. 8, PageID# 72), Defendants voluntarily dismissed that counterclaim before trial. (Doc. No. 50.) Defendants did not make a claim to the Alotech property allegedly in Plaintiffs' possession until

9

nearly two years later when they agreed to the Term Sheet. Therefore, Defendants' alleged harm is not immediate either.

Second, Plaintiff Michael Grassi admitted that, after agreeing to the Term Sheet, he "wiped" data from one of the devices that he was to turn over, and he admitted that before doing so, he made a "virtual" copy "for [his] purposes." (Doc. No. 215, PageID# 5428, 5438-5443.) Accordingly, Defendants have demonstrated that the harm they seek to prevent has occurred in the past. Even so, the Court has ordered EY to maintain a forensic copy of all the data on the devices in its possession. Plaintiffs could entirely destroy the original devices and their data, and yet a forensic copy will remain with EY. Therefore, any harm Defendants could suffer is repairable. This factor also weighs against a stay.

### 3. Harm to Others

There is little harm to Plaintiffs if the Court were to stay its Order requiring the return of the devices. But this consideration concerns not only the party opposing the stay, but also "the prospect that others will be harmed by the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). EY desires to "return[] the devices as soon as practicable" and to "cross [the Court's Order] off [their] list." (Doc. No. 310-1, PageID# 6719.) Granting a stay would force EY to maintain possession of the devices and require their continued involvement in this years-long dispute. This factor too weighs against a stay.

### 4. Public Interest

Defendants argue that the public interest favors the protection of trade secrets and the enforcement of settlement agreements. First, as noted above, there is no evidence that Defendants' trade secrets are on the subject devices, and Defendants never made a counterclaim for trade secrets misappropriation. Second, a stay will not further a "[p]ublic policy [that] strongly favors settlement

10

of disputes without litigation." *ARO Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Rather, it will prolong this dispute, mean more litigation, result in the expenditure of additional judicial resources, and not bring the parties any closer to a final resolution of this matter.

**III.   Conclusion**

On balance, all factors weigh against a stay. Accordingly, the Court DENIES Defendants' Motion to Stay Enforcement of the Court's March 19, 2024 Order Pending Appeal. (Doc. No. 314.)

**IT IS SO ORDERED.**

Dated:  April 17, 2024                                                       *s/ Pamela A. Barker*
                                                                                              PAMELA A. BARKER
                                                                                              UNITED STATES DISTRICT JUDGE